Merrimack
No. 85-049

JACQUELINE CLARKE

v.

WILLIAM J. CLARKE

July 3, 1985

*Branch & Greenhalge P.A.*, of Concord (*Robert D. Branch* on the brief and orally), for the plaintiff.

*Hampe and McNicholas*, of Concord (*Bruce E. Viles* on the brief and orally), for the defendant.

DOUGLAS, J.   This case presents the sole issue whether the trial court erred in dismissing, for lack of jurisdiction, a petition for modification of an out-of-State custody decree. We find that it did not and affirm.

The plaintiff mother, Jacqueline Clarke, and the defendant father, William J. Clarke, were married in 1976 and thereafter resided in Binghamton, New York. They had one child, Thomas, born on May 21, 1979. They separated in June 1981, when the mother moved with the child to Concord, New Hampshire, where they have since lived. The Clarkes were divorced by decree of the Family Court, Broome County, New York, on December 30, 1982. Joint custody of Thomas was given to the parents, with primary residence to be with the mother, and with the father having certain visitation rights.

The mother denied the father visitation with the child from March 1984 to June 1984, causing him to petition the Family Court of Broome County for an order correcting the situation. The mother appeared by counsel and on July 6, 1984, that court continued its prior order of visitation.

The mother filed a petition in this State in the Merrimack County Superior Court seeking *ex parte* relief in the form of a temporary order to modify custody. On September 18, 1984, the Court (*Contas,* J.) ordered "[t]hat the temporary custody of the minor child is committed to the plaintiff, terminating defendant's right to have the minor child with him one week of each month until further order of the Court." A hearing on permanent custody was scheduled for November 8, 1984.

As a result of the mother's again denying him visitation in September, the father filed on September 24, 1984, a second petition with the New York family court to enforce the terms of the original custody decree. The mother appeared by counsel at the show cause hearing on October 26, 1984, and a hearing on the merits was scheduled for December 4, 1984.

On November 13, 1984, the New York court, in response to the filing with it of the temporary order of the New Hampshire court, ordered that the proceedings before it regarding custody and visitation of Thomas Clarke be "suspended" and the scheduled hearing be cancelled.

On November 7, 1984, the father filed, in the Merrimack County Superior Court, a motion to dismiss the mother's petition to modify the New York custody decree for lack of subject matter jurisdiction. After a hearing on the motion, the Master (*Bruce F. Dalpra,* Esq.) found on December 23, 1984, that the mother had "not met the jurisdictional requirements of RSA 458-A:14, I" and recommended that the motion to dismiss be granted and that all matters be deferred to the Family Court of Broome County, New York. This recommendation was approved by the Court (*Dunn,* J.) on January 8, 1985. The plaintiff's motion for rehearing was denied.

Upon being informed that the *ex parte* order of the New Hampshire court was dissolved by the January 8, 1985, court order, the family court in New York scheduled a hearing for March 1, 1985, "regarding consideration of custody issues deferred to this Court by the New Hampshire Court and Violation of Court Order (Direct Payment)." "Direct Payment" refers to the mother's "petition for violation of support payments" that she filed with the New York family court on January 14, 1985. That hearing was subsequently suspended when the New York court was informed that this court had agreed to hear plaintiff's appeal from the superior court's order of dismissal.

Critical to our analysis of the issue of jurisdiction presented here is the recognition that this case involves modification of an existing custody order and not formulation of an initial decree. *Neger v. Neger,* 93 N.J. 15, 28, 459 A.2d 628, 635 (1983); *Kumar v. Superior Court of Santa Clara Cty.,* 186 Cal. Rptr. 772, 778, 652 P.2d 1003, 1009 (1982). Under the Uniform Child Custody Jurisdiction Act (UCCJA), which New Hampshire adopted in 1979 as RSA chapter 458-A, initial jurisdiction and modification jurisdiction are governed by different standards. "Initial jurisdiction is primarily in the home state of the child," while "[j]urisdiction to modify an existing custody decree is reserved for the state that rendered the decree." Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA,* 14 FAMILY LAW QUARTERLY 203, 204 (1981) (hereinafter cited as *Interstate Custody*).

The differing treatment of these two jurisdictional situations reflects the concerns underlying the UCCJA as a whole "to bring some semblance of order into the existing chaos" of jurisdictional

determinations and to avoid the harm to children which jurisdictional conflicts and confusion engender. Prefatory Note to UCCJA, 9 U.L.A. 111, 114 (1979); C. DOUGLAS, 3 NEW HAMPSHIRE PRACTICE, FAMILY LAW § 271 (1982).

■  Specifically, RSA 458-A:14, which governs modifications of out-of-State custody decrees, was adopted "to achieve greater stability of custody arrangements and avoid forum shopping" by discouraging parents, unhappy with existing custody arrangements, from moving to another State seeking a more favorable outcome. Commissioner's Note to UCCJA § 14, 9 U.L.A. 154 (1979); *see Mattleman v. Bandler,* 123 N.H. 368, 374, 461 A.2d 561, 564 (1983). Before the adoption of the UCCJA, moving a child to another State gave the second State concurrent jurisdiction in the same custody matter and this "frequently resulted in collisions between the courts of different states which made contradictory custody awards," thereby keeping the lives of the affected children in constant turmoil. *Interstate Custody, supra* at 204, 214.

RSA 458-A:14, I, seeks to remedy this situation by specifying the circumstances under which a court may modify an out-of-State custody decree:

> "If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction."

■■  By the clear import of its terms, other States "shall not modify" the custody decree of the State that rendered that decree unless the first State no longer has jurisdiction or has declined jurisdiction. Other States "must respect the continuing jurisdiction of the prior state which is exclusive." *Interstate Custody, supra* at 204. In short, although more than one State may have initial jurisdiction, "there is no concurrent jurisdiction to modify a decree under the act." *Neger v. Neger,* 93 N.J. at 28, 29, 459 A.2d at 635, 636.

In order for the New Hampshire court to assume jurisdiction in this case, it is incumbent upon the mother to show that New York does not now have jurisdiction or that it has declined jurisdiction. New York adopted the UCCJA in 1977, and the act is contained in sections 75-a to 75-z, McKinney's Domestic Relations. No changes in the uniform act pertinent here were made upon its adoption in

either New York or New Hampshire. Therefore, reference will be made to the New Hampshire statute with parenthetical citations to the corresponding New York sections.

Jurisdictional conditions required to be met in order to make child custody determinations are set forth in RSA 458-A:3 (N.Y. Dom. Rel. Law 75-d (McKinney 1984)). The relevant portions of this statute provide:

> "I. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree only when:
>
> (a) This state . . . is the home state of the child at the time of commencement of the custody proceeding; or . . .
>
> (b) It is in the best interest of the child that a court of this state assume jurisdiction because (1) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (2) there is within the jurisdiction of the court substantial evidence concerning the child's present or future care, protection, training, and personal relationships. . . ."

Clearly, New Hampshire would have jurisdiction to formulate an original decree in this case since it is now the home State of Thomas Clarke. RSA 458-A:2, V (N.Y. Dom. Rel. Law 75-c(5) (McKinney 1984)). New Hampshire's ability to make an initial decree is not relevant, however, since this case involves a modification of an out-of-State decree. Here we are concerned with whether New York continues to have jurisdiction. Since it is no longer the home State of the child, we turn to subparagraph (b) of RSA 458-A:3, I, to determine whether the child and his parents have retained a "significant connection" with New York and whether "substantial evidence" pertaining to the custody determination remains in that State. *Kumar v. Superior Court of Santa Clara Cty.*, 186 Cal. Rptr. at 776–77, 652 P.2d at 1007–08; *Cotter v. Woods,* 666 P.2d 1382, 1383–84 (Or. Ct. App. 1983).

> "Exclusive continuing jurisdiction [in the original state] is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside. Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required."

*Interstate Custody, supra* at 215 (footnotes omitted); C. DOUGLAS, 3 NEW HAMPSHIRE PRACTICE, FAMILY LAW § 273 (1982).

On the facts of this case we find that New York retains "jurisdiction under the jurisdictional prerequisites substantially in accordance with [RSA chapter 458-A]" and that it has not declined jurisdiction. RSA 458-A:14, I (N.Y. Dom. Rel. Law 75-o (McKinney 1984)).

■ The child was born in New York and resided there until a few months after his second birthday. From the time of the divorce of his parents, he has had significant visitation in New York with his father, who continues to reside there. New York is the only State in which the father, mother, and child lived together as a family, so that evidence is available there regarding parental attitudes. Additionally, the court in New York heard and considered all the evidence relating to the welfare of the child when it initially determined custody. These contacts are significant enough, and the evidence available substantial enough, to warrant a finding that New York retains jurisdiction under RSA 458-A:3, I(b) (N.Y. Dom. Rel. Law 75-d(1)(b) (McKinney 1984)). Our finding of continued jurisdiction in New York is in accord with the decisions of other States, which have found continued jurisdiction in the original State on facts almost identical to those in this case. *Neger v. Neger*, 93 N.J. 15, 459 A.2d 628 (1983); *Kumar supra*; *Cotter supra*; *Brown v. Dist. Ct.*, 192 Colo. 93, 557 P.2d 384 (1976).

■ The mother contends, however, that even if the New York family court has continued jurisdiction, it has effectively declined to exercise that jurisdiction. We disagree. On the record before us, the New York court merely "suspended" proceedings pending the outcome of litigation in New Hampshire. That the New York court did not intend to relinquish jurisdiction is evidenced by the fact that it rescheduled a hearing *after* the granting of the defendant's motion to dismiss in the Merrimack County Superior Court. New York again suspended its proceedings upon learning of acceptance of the mother's appeal by this court. This type of deference is not a relinquishment of continued jurisdiction. *See In re Marriage of Ratshin*, 192 Cal. Rptr. 891, 895 (Cal. Ct. App. 1983). Unless there has been a final order by an out-of-State court declining jurisdiction to modify its initial custody decree, the courts of New Hampshire will not assume jurisdiction to modify such a decree on facts as found in this case.

*Affirmed.*

All concurred.