**G.S., formerly B., Petitioner,**

v.

**Honorable Noah EWING, Judge of the District Court of McClain County, 21st Judicial District, and C.B., Respondents.**

**No. 74261.**

Supreme Court of Oklahoma.

Jan. 16, 1990.

John R. Long, Oklahoma City, for petitioner.

Charles N. Gray, Purcell, for respondents.

KAUGER, Justice.

The two issues presented are: 1) whether an Oklahoma court, having rendered the original divorce decree, has jurisdiction to modify custody if the non-custodial parent resides in Oklahoma, but Oklahoma is not the child's "home state" within the meaning of 10 O.S.1981 § 1604;[1] and 2) if the trial court was correct in hearing the cause, should it have refused to exercise jurisdiction because Oklahoma is an inconvenient forum. We find that: 1) an Oklahoma court which renders a divorce decree retains continuing jurisdiction to modify custody pursuant to 10 O.S.1981 § 1616[2] if significant parental contact is maintained, and if one parent resides in Oklahoma; and 2) the trial court was correct in exercising jurisdiction because the children have a close connection with Oklahoma, and because substantial evidence needed to determine the custody issue is located within the state. Oklahoma is not an inconvenient forum.

When this cause was argued to the Court on November 8, 1989, the petitioner/mother requested an award of attorneys' fees and other costs. Normally, there is not a prevailing party in proceedings for divorce[3] or child custody modification. However, the Uniform Child Custody Jurisdiction Act (the UCCJA/Act), 10 O.S.1981 § 1601, *et seq.*, provides that the trial court has discretion to award attorneys' fees and other costs to the prevailing party if it determines that the forum was clearly inappropriate, or if it dismisses a petition for

1. Title 10 O.S.1981 § 1604(5) provides:

"'Home state' means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six (6) consecutive months, and in the case of a child less than six (6) months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period."

2. Title 10 O.S.1981 § 1616 provides:

"A. If a court of another state has made a custody decree, a court of this state shall not modify that decree unless:

1. It appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this act or has declined to assume jurisdiction to modify the decree; and

2. The court of this state has jurisdiction. B. If a court of this state is authorized under subsection A of this section and Section 10 of this act to modify a custody decree of another state it shall give due consideration to the transcript of the record and other documents of all previous proceedings submitted to it in accordance with Section 24 of this act."

3. *Chamberlain v. Chamberlain,* 720 P.2d 721, 727 (Okla.1986).

improper removal of the child from another forum or from custody of the proper party.[4] Because Oklahoma is an appropriate forum to hear the instant cause, and because there is no question concerning improper removal of the children, the mother's request for attorneys' fees and costs is denied.

## FACTS

The petitioner/mother and the respondent/father were married on January 30, 1982. The couple had two children, L.L.B. born on September 14, 1982, and A.H.B. born on August 20, 1985. The couple was divorced in McClain County on September 22, 1986. The mother and children resided in Oklahoma until shortly before the decree. Under the terms of the decree, custody was placed with the mother, with the father receiving reasonable visitation rights. When the decree was entered, the mother and two children were living in Jasper County, Missouri. Since the divorce, the children have lived with their mother in Missouri.

On August 5, 1989, the children's fraternal grandmother went to the children's home in Missouri and brought the children to Oklahoma for their regular summer visitation. The mother entered Baxter Memorial Hospital, Baxter Springs, Kansas, on August 12, 1989, for "treatment for Co-Dependency." She was dismissed from the hospital on September 13, 1989. The facts are disputed concerning whether the treatment, and its duration, were discussed by the parties before the children came to Oklahoma. The mother asserts that she and the children's father agreed that the children's visitation would be extended to allow her to complete a thirty-day treat-

ment program. The father alleges that he was unaware that the mother had entered treatment, or that the children would need to extend their stay until the mother called him on August 17, 1989. The type of treatment for which the mother voluntarily committed herself is in dispute.

The father enrolled L.L.B. in the Purcell public schools on August 24, 1989. However, when the father tried to enroll A.H.B. in a pre-school program, he discovered that the child had not been given his regular immunizations—perhaps because of a previous allergic reaction. On September 18, 1989, the father filed a motion to modify the custody provisions of the divorce decree. He was also granted temporary custody of the two children. The same day, the mother arrived in Purcell to pick up the children, but the father refused to surrender their custody. On October 2, 1989, the mother filed a writ of habeas corpus and a motion to dismiss for lack of jurisdiction under the Uniform Child Custody Jurisdiction Act (the UCCJA/Act), 10 O.S.1981 § 1601, et seq. After denying the writ of habeas corpus, the trial court set the motion to dismiss for a hearing on October 19, 1989—the same date as the hearing on the father's temporary custody order.

All parties appeared before the trial court on October 19, 1989. The trial court denied the mother's motion to dismiss because: 1) no action was pending in any other state; 2) Oklahoma was a convenient forum; 3) the father had not engaged in reprehensible conduct; and 4) an emergency existed because of the mother's mental health. A hearing on the merits of the father's motion to modify the divorce decree was set for December 1, 1989, and we issued a temporary stay on November 30, 1989.

4. See, *State ex rel. Murphy v. Boudreau*, 653 P.2d 531, 534 (Okla.1982).
Title 10 O.S.1981 § 1609(G) provides:
"If it appears to the court that it is clearly an inappropriate forum it may require the party who commenced the proceedings to pay, in addition to the costs of the proceedings in this state, necessary travel and other expenses, including attorneys' fees, incurred by other par-

ties or their witnesses. Payment is to be made to the clerk of the court for remittance to the proper party."
Title 10 O.S.1981 § 1610(C) provides:
"In appropriate cases a court dismissing a petition under this section may charge the petitioner with necessary travel and other expenses, including attorneys' fees, incurred by other parties or their witnesses."

I

## AN OKLAHOMA COURT, WHICH RENDERS A DIVORCE DECREE, RETAINS CONTINUING JURISDICTION TO MODIFY CUSTODY PURSUANT TO 10 O.S.1981 § 1616 IF SIGNIFICANT PARENTAL CONTACT IS MAINTAINED AND IF ONE PARENT RESIDES IN OKLAHOMA.

■ The mother relies on 10 O.S. Supp. 1982 § 1605 [5] for the proposition that once a forum other than Oklahoma becomes the children's "home state," jurisdiction of a custody dispute is proper only in the state where the children reside. The mother's allegation is not supported by the express language of the statute. It contains four distinct prerequisites for jurisdiction: home state, best interest of the child, abandonment or emergency, and lack of jurisdiction in any other state. Neither is this assertion supported by the teaching in *Holt v. District Court*, 626 P.2d 1336, 1341 (Okla. 1981) that the bases for jurisdiction set forth in § 1605 are *in the alternative.* The father relies upon subsection (2) of the same statute. He contends the trial court should assume jurisdiction: because of significant connections between the children and this state; because there is substantial evidence located in Oklahoma concerning the children's present or future well-being; and because it is in the best interest of the children.

Because the mother and the father each fail to acknowledge the difference between jurisdiction to make an initial custody decree and jurisdiction to modify a custody decree, both parties misconceive the problem. The father seeks to modify an existing custody order. Therefore, the controlling issue is whether pursuant to 10 O.S 1981 § 1616, Oklahoma, as the state which rendered the original divorce decree (decree state), retains continuing jurisdiction to modify custody. These litigants are not the first to be confused by the distinction between initial and modification jurisdiction.[6] Perhaps, the confusion has been engendered to some extent by a misperception of our decision in *State ex rel. Murphy v. Boudreau*, 653 P.2d 531, 533 (Okla.1982), and the recent decision of the Court of Appeals in *Breaux v. Mays*, 746 P.2d 708, 710 (Okla.Ct.App.1987).

In *Boudreau*, we held that although an Oklahoma court had entered the parties' divorce, jurisdiction to consider modification of the custody decree was in the children's "home state." The father in *Boudreau* petitioned an Oklahoma court to modify its prior custody decree after having removed his son from the child's "home state" without either the permission or the

5. Title 10 O.S. Supp.1982 § 1605 provides in pertinent part:
"A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
1. This state:
  a. is the home state of the child at the time of commencement of the proceeding, or
  b. had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
2. It is in the best interest of the child that a court of this state assume jurisdiction because:
  a. the child and his parents, or the child and at least one contestant, have a significant connection with this state, and
  b. there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships; or
3. The child is physically present in this state and:
  a. the child has been abandoned, or
  b. it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
4. a. It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs 1, 2 or 3 of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and
  b. it is in the best interest of the child that this court assume jurisdiction ..."

6. See, *Neger v. Neger*, 93 N.J. 15, 459 A.2d 628, 635 (1983); *Kumar v. Superior Court*, 186 Cal. Rptr. 772, 778, 32 Cal.3d 689, 652 P.2d 1003, 1009 (1982).

knowledge of the child's mother. The father sought to modify custody provisions of a divorce decree entered in Oklahoma in 1978. However, *the original custody award was made by a New Mexico court in 1976.* The child was removed from New Mexico and brought to Oklahoma by his father in violation of the New Mexico custody order. Although our discussion in *Boudreau* centered on the concept of "home state" jurisdiction, a proper analysis, which would have reached the same result under the analysis we apply today, would have been to recognize that New Mexico, as the state which entered the original order awarding custody, had jurisdiction to modify its custody order under the UCCJA.

In *Breaux,* a resident parent filed a motion to modify a custody provision entered by an Oklahoma court. The nonresident parent filed a motion to dismiss on the grounds that the trial court lacked subject matter jurisdiction. The Court of Appeals recognized the intent of the UCCJA—that the original decree state has continuing jurisdiction to modify custody awards. However, it held that because Oklahoma was no longer the children's "home state" the trial court was without jurisdiction to modify the decree. Because we find that an Oklahoma court, which renders a divorce decree, retains continuing jurisdiction to modify custody if significant parental contact has not ceased and if one parent resides in Oklahoma, *Breaux* can no longer

be considered even persuasive authority[7] and is hereby overruled.

Generally, district courts have continuing jurisdiction to modify child custody and support orders.[8] Under the UCCJA, initial and modification jurisdiction are treated differently. Initial jurisdiction is primarily in the state with the closest connections to the child and to information about his/her present and future well-being.[9] Jurisdiction to modify an existing custody decree is reserved for the state which rendered the decree.[10] Jurisdiction remains in the decree state as long as one parent continues to reside in the original state.[11]

Recognition of the priority jurisdiction of the decree state reinforces the underlying policy of the UCCJA to prevent forum shopping by disappointed parents to gain custody rights denied in a previous forum.[12] This is accomplished through two sections of the Act. Section 1608 limits the authority of an Oklahoma court to hear a custody dispute if there is a suit pending in a court of another state.[13] Section 1616 is identical to the Uniform Act. It requires that Oklahoma courts defer to the continuing jurisdiction of the court entering an original custody decree as long as that state has jurisdiction under the Act.[14]

The counterpart to § 1616 is found in § 14 of the Uniform Child Custody Jurisdiction Act. The comments to that section emphasize the importance of deferring to the original decree entering state to give stability to custody arrangements.[15] Sec-

7. No petition for certiorari was filed in this cause.

8. *Barnett v. Klein,* 765 P.2d 777, 779 (Okla.1988).

9. *In re Marriage of Leyda,* 398 N.W.2d 815, 819 (Iowa 1987); *Neger v. Neger,* see note 6, supra.

10. *Meier v. Davignon,* 105 N.M. 567, 734 P.2d 807, 809 (1987); B. Bodenheimer, "Interstate Custody: Initial Jurisdiction & Continuing Jurisdiction under the UCCJA," 14 Fam.L.Q. 203–04 (1981).

11. *State ex rel. Cooper v. Hamilton,* 688 S.W.2d 821, 825 (Tenn.1985); *Kumar v. Superior Court,* see note 6, 186 Cal.Rptr. at 776, 652 P.2d at 1007, supra.

12. *Knoth v. Knoth,* 297 S.C. 460, 377 S.E.2d 340, 342 (1989); *Fry v. Ball,* 190 Colo. 128, 544 P.2d 402, 405 (1975).

13. Title 10 O.S.1981 § 1608 provides in pertinent part:
"A. A court of this state shall not exercise its jurisdiction under this act if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this act, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons ..."

14. Title 10 O.S.1981 § 1616, see note 2, supra.

15. The Comment to § 14 of the Uniform Laws provides in pertinent part:
"... In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection (a) declares that other states will defer to the continuing jurisdiction of the

tion 1616 clearly prohibits an Oklahoma court from modifying a custody provision if the court entering the original decree continues to have jurisdiction. The corollary to the principle announced in § 1616 is that *significant connection jurisdiction continues in the state of prior decree if one parent continues to reside in the state even if the child lives in another state for six months or more.*[16] Section 1616 confers a kind of inverted jurisdiction: it prohibits a non-decreeing state's exercise of jurisdiction except in limited circumstances.[17] Its language emphasizes that the original court is intended to have and to retain exclusive, continuing jurisdiction.[18]

We find that after a court renders a divorce decree, it retains continuing jurisdiction pursuant to 10 O.S.1981 § 1616 to modify custody if significant parental contact is maintained, and if one parent resides in Oklahoma. This finding is in accord with the majority of jurisdictions which have considered the issue[19] and with this Court's holding in *Roundtree v. Bates,* 630 P.2d 1299, 1301 (Okla.1981). Section 1616 requires Oklahoma courts to defer to custody orders of another state as well as to decline their modification unless the other state is no longer vested with jurisdiction under the UCCJA. *Roundtree* involved the issue of whether an Oklahoma court need defer to a decree entering state on the basis of comity. In *Roundtree,* neither parent continued to reside in Kansas, the decree state. Oklahoma was the children's "home state." However, the father had obtained a modification of the custody provisions of the original decree, and he sought to enforce the modification through a writ of habeas corpus in an Oklahoma court. The trial court, in deference to the decree state, granted the father's writ. We held that because neither parent continued to reside in Kansas, it was error for

court of another state as long as that state has jurisdiction under the standards of this Act. In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case to satisfy section 3 ..."
See also, B. Bodenheimer, "Progress Under the Uniform Child Custody Jurisdiction Act & Remaining Problems: Punitive Decrees, Joint Custody, & Excessive Modifications," 65 Calif.L. Rev. 978, 983–84 (1977); B. Bodenheimer, "The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws," 22 Vand.L.Rev. 1207, 1236–37 (1969).

16. *Fry v. Ball,* see note 12, 544 P.2d at 406, supra.

17. *Szmyd v. Szmyd,* 641 P.2d 14, 16 (Alaska 1982).

18. *Funk v. Macaulay,* 457 N.E.2d 223, 227 (Ind. Ct.App.1983).

19. *McDougald v. Jenson,* 596 F.Supp. 680, 686 (N.D.Fla.1984), *aff'd,* 786 F.2d 1465 (1986), *cert denied,* 479 U.S. 860, 107 S.Ct. 207, 93 L.Ed.2d 137 (1986), *reh'g denied,* 479 U.S. 1001, 107 S.Ct. 614, 93 L.Ed.2d 611 (1986); *Knoth v. Knoth,* see note 12, supra; *Waller v. Richardson,* 757 P.2d 1036, 1038 (Alaska 1988); *State* ex rel. *Cooper v. Hamilton,* 688 S.W.2d 821, 823–24 (Tenn.1985); *In re Marriage of Leyda,* see note 9, supra; *State ex rel. Dept. of Human Serv. v. Avinger,* 104 N.M. 255, 259, 720 P.2d 290, 294 (1986); *Clarke*

*v. Clarke,* 126 N.H. 753, 496 A.2d 361, 364 (1985); *Houtchens v. Houtchens,* 488 A.2d 726, 729 (R.I.1985); *Kumar v. Superior Court,* see note 6, supra; *Biggers v. Biggers,* 103 Idaho 550, 555, 650 P.2d 692, 697 (1982); *Neger v. Neger,* see note 6, supra; *E.E.B. v. D.A.,* 89 N.J. 595, 446 A.2d 871, 880 (1982), *cert. denied,* 459 U.S. 1210, 103 S.Ct. 1203, 75 L.Ed.2d 445 (1983), *reh'g denied,* 460 U.S. 1104, 103 S.Ct. 1806, 76 L.Ed.2d 369 (1983); *St. Clair v. Faulkner,* 305 N.W.2d 441, 446 (Iowa 1981); *Brock v. District Court,* 620 P.2d 11, 13 (Colo.1980); *Heyward v. Heyward,* 519 So.2d 1027, 1029 (Fla.Dist.Ct.App. 1988); *In re Marriage of McEvoy,* 414 N.W.2d 855, 857 (Iowa Ct.App.1987); *In re Marriage of Phillips,* 723 S.W.2d 579, 582 (Mo.Ct.App.1987); *Stewart v. Stewart,* 83 Or.App. 675, 732 P.2d 951, 955 (1987); *Clark v. Atkins,* 489 N.E.2d 90, 94 (Ind.Ct.App.1986); *Snider v. Snider,* 474 So.2d 1374, 1379 (La.Ct.App.1985); *In re Marriage of Kitchen,* 81 Ill.Dec. 644, 126 Ill.App.3d 192, 467 N.E.2d 344, 348 (1984); *Moore v. Perez,* 428 So.2d 113, 115 (Ala.Ct.App.1983); *Warman v. Warman,* 294 Pa.Super. 285, 439 A.2d 1203, 1209 (1982). See also, Annot., "Validity, Construction, and Application of Uniform Child Custody Jurisdiction Act," 96 A.L.R.3d 968, 981 (1979).
Only three states do not recognize the continuing jurisdiction of the decretal state. See, *Bell v. Bell,* 288 Ark. 468, 705 S.W.2d 891–92 (1986); *Hill v. Hill,* 481 So.2d 227, 230 (Miss.1985); *Grimes v. Grimes,* 706 S.W.2d 340–41 (Tex.Ct. App.1986).

the trial court to defer to the Kansas court. There, the Kansas modification order was held not to be entitled to full faith and credit not just because the children's "home state" was in Oklahoma, but also, because neither parent resided within the boundaries of the decree state.

Our finding is further buttressed by the fact that Missouri has also enacted the UCCJA. Its statutory scheme contains a section similar to § 1616. The section prohibits Missouri courts from modifying a sister state's custody decree if the court which entered the original decree has jurisdiction under the UCCJA, and if it has not declined to exercise jurisdiction.[20] Recently, the Missouri Court of Appeals held in *In re Marriage of Phillips*, 723 S.W.2d 579, 582 (Mo.Ct.App.1987) that Mo.Rev.Stat. § 452.505 (1978) prohibited a Missouri trial court from modifying an original decree entered in Virginia. Therefore, even if the father had instituted these proceedings in Missouri, the Missouri statutory scheme would prevent Missouri courts from exercising jurisdiction over the instant cause. Although Missouri is the children's "home state," the father continues to be a resident of Oklahoma, and the children have significant connections with the state.[21]

**20.** Mo.Rev.Stat. § 452.505 (1978) provides:
"If a court of another state has made a custody decree, a court of this state shall not modify that decree unless it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with sections 452.440 to 452.550 or has declined to assume jurisdiction to modify the decree and the court of this state has jurisdiction."

**21.** The facts here present a classic example of a situation in which the "home state" of a child should defer to the continuing jurisdiction of the state which has entered the original decree. See, B. Bodenheimer, "The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws," note 15, supra, in which Professor Bodenheimer gives the following example:
"... A typical example is the case of the couple who are divorced in state A, their matrimonial home state, and whose children are awarded to the wife, subject to visitation rights of the husband. Wife and children move to state B, with or without permission of the court to remove the children. State A

## II

## THE TRIAL COURT WAS CORRECT IN EXERCISING JURISDICTION, BECAUSE THE CHILDREN HAVE A CLOSE CONNECTION WITH OKLAHOMA, AND BECAUSE SUBSTANTIAL EVIDENCE NEEDED TO DETERMINE THE CUSTODY ISSUE IS LOCATED WITHIN THE STATE. OKLAHOMA IS NOT AN INCONVENIENT FORUM.

The determination that the trial court has jurisdiction to hear the father's motion to modify custody does not end our inquiry. In *Holt v. District Court*, 626 P.2d 1336, 1341 (Okla.1981), we adopted an approach to handle petitions filed under the UCCJA. That approach requires a two-step process. We must determine whether the Oklahoma Court has jurisdiction; and if so, should the Oklahoma court exercise its jurisdiction.[22] The mother contends that the trial court should have declined jurisdiction on the basis of the doctrine of *forum non conveniens*. The father asserts that the trial court was correct in exercising jurisdiction because the children have close connections with Oklahoma; and because there is substantial evidence located within the state on the custody issue.

A trial court may decline to exercise jurisdiction pursuant to 10 O.S.1981 § 1609 [23]

has continuing jurisdiction and the courts in State B may not hear the wife's petition to make her the sole custodian, eliminate visitation rights, or make any other modification of the decree, even though state B has in the meantime become the 'home state' under section 3. The jurisdiction of state A continues and is exclusive as long as the husband lives in state A unless he loses contact with the children, for example, by not using his visitation privileges for three years ..."

**22.** *Holt v. District Court*, 626 P.2d 1336, 1341 (Okla.1981); Note, "Domestic Relations: III. Child Custody, A. Uniform Child Custody Jurisdiction Act," 6 Okla. City U.L.Rev. 643, 659 (1981).

**23.** Title 10 O.S.1981 § 1609 provides in pertinent part:
"A. A court which has jurisdiction under this act to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum...."

if it finds two factors: (1) that Oklahoma is an inconvenient forum, and (2) that another state is a more appropriate forum. The use of the term "may" by the Legislature is directory in nature rather than mandatory [24] and it implies permissive or discretionary conduct.[25] It is clear from a plain reading of the Act that determination of the jurisdictional issue is discretionary with the trial court. The trial court has discretion to determine whether its exercise of jurisdiction [26] is appropriate considering the best interests of the child/children involved.

We cannot say that the trial court abused its discretion by exercising jurisdiction over the instant cause. Oklahoma has a close connection with both L.L.B. and A.H.B. Oklahoma was the only matrimonial domicile. Their father is here, together with a number of members of the children's extended family. L.L.B. attends an Oklahoma public school. A.H.B. is being seen by a local pediatrician who reports that he is doing well, and that his asthma condition has stabilized. Because the father's application for modification of custody will involve not only the mother's fitness as a parent and the existence of changed circumstances, but the father's competence to have custody of his children, substantial evidence concerning the future care of the children is located in Oklahoma. Additionally, the original records concerning the first award of custody are located in Oklahoma, and the trial judge who refused to decline jurisdiction is the same judge who heard and granted the original divorce.[27]

## CONCLUSION

Pursuant to 10 O.S.1981 § 1616, once an Oklahoma court enters a custody order, it has continuing jurisdiction to modify the order.[28] A person seeking to modify a custody provision must petition the decree state for relief. Jurisdiction is lost only if both parents have left the state, or if the resident parent has discontinued relations with his/her child/children.

Although the jurisdiction of the decree state is exclusive, a trial court has discretion under 10 O.S.1981 § 1609 to decline to hear a cause if Oklahoma is an inconvenient forum, and if some other state's judicial system would be better suited to hear the cause. A finding of *forum non conveniens* might be appropriate if the resident parent has cut all connections with his/her children. Here, the Oklahoma trial court was a proper forum to hear the cause because the parental bond has been maintained, and substantial evidence relating to custody is located in Oklahoma.

ORIGINAL JURISDICTION ASSUMED; WRIT OF PROHIBITION, WRIT OF MANDAMUS, AND WRIT OF HABEAS CORPUS DENIED.

OPALA, V.C.J., and HODGES, DOOLIN and SUMMERS, JJ., concur.

C. In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
1. If another state is or recently was the child's home state;
2. If another state has a closer connection with the child and his family or with the child and one or more of the contestants;
3. If substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state;
4. If the parties have agreed on another forum which is no less appropriate; and
5. If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in Section 2 of this act ..."

24. *State ex rel. Cartwright v. Oklahoma Natural Gas Co.,* 640 P.2d 1341, 1345 (Okla.1982).

25. *Shea v. Shea,* 537 P.2d 417–18 (Okla.1975).

26. *Meier v. Davignon,* see note 10, 105 N.M. at 570, 734 P.2d at 810, supra.

27. This fact in itself has prompted a finding by other courts that jurisdiction was properly exercised. *Biggers v. Biggers,* see note 19, supra; *Hofer v. Agner,* 373 So.2d 48, 51 (Fla.Dist.Ct. App.1979).

28. In *Cooper v. Cooper,* 616 P.2d 1154, 1156 (Okla.1980), we enumerated certain circumstances which would justify concurrent jurisdiction to modify a custody order. The decision in the instant cause does not infringe upon that ruling.

HARGRAVE, C.J., and LAVENDER, SIMMS and ALMA WILSON, JJ., dissent.

LAVENDER, Justice, dissenting:

Because the court errs in its interpretation of continuing jurisdiction and *forum non conveniens* under the UCCJA and Oklahoma case law, I must respectfully dissent from this decision. I would agree that Oklahoma had continuing jurisdiction to initially hear the petition for modification of custody. However, according to well established precedent,[1] Oklahoma should have declined to exercise its jurisdiction. Under the circumstances of this case, Missouri is a more appropriate forum. 10 O.S.1981 § 1609.[2]

### I.

In a modification of custody case, the court must first determine if it has jurisdiction and then, if jurisdiction should be exercised. *Holt v. District Court*, 626 P.2d 1336, 1341 (Okla.1981). Generally a decree state has continuing jurisdiction to modify a custody order. *Roundtree v. Bates*, 630

P.2d 1299, 1301 (Okla.1981). The intent of the UCCJA was likewise to maintain continuing jurisdiction in the state issuing the original decree. *Id.* at 1302. However, equally clear is the fact that a court was never deemed to have perpetual jurisdiction and that at some point it may lose jurisdiction. *Id.*

10 O.S. § 1616 states that a custody order of another state may be modified if that state "does not now have jurisdiction under jurisdictional prerequisites *substantially in accordance with this act* ..." A decree state that loses home state status *and* ceases to have significant connections and substantial evidence as *between the child* and one or both parents, must then meet one of the alternative prerequisites for maintaining jurisdiction or jurisdiction is lost. *Roundtree*, 630 P.2d at 1302–03. It is not enough therefore, to state as the majority has in their opinion that jurisdiction is maintained so "long as one parent still resides in the original state." The UCCJA and Oklahoma case law require more.[3] Nor do I find that *Fry v. Ball*, 190

---

1. See *Breaux v. Mays*, 746 P.2d 708 (Okla.Ct.App. 1987); *State ex rel. Murphy v. Boudreau*, 653 P.2d 531 (Okla.1982); *Roundtree v. Bates*, 630 P.2d 1299 (Okla.1981); *Holt v. District Court*, 626 P.2d 1336 (Okla.1981); and *Cooper v. Cooper*, 616 P.2d 1154 (Okla.1980).

2. 10 O.S.1981 § 1609 states in part:
   A. A court which has jurisdiction under this act to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
   B. A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.
   C. In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
   1. If another state is or recently was the child's home state;
   2. If another state has a closer connection with the child and his family or with the child and one or more of the contestants;
   3. If substantial evidence concerning the child's present or future care, protection, train-

ing and personal relationships is more readily available in another state;
   4. If the parties have agreed on another forum which is no less appropriate; and
   5. If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in Section 2 of this act.

3. Nor would the PKPA (Parental Kidnapping Prevention Act of 1980 (U.S.Code, tit. 28, § 1738A)) support such a holding. The relevant sections of 1738A are:
   (c) A child custody determination made by a court of a state is consistent with the provisions of this section only if—
   (1) such court has jurisdiction under the law of such state;
   (d) The jurisdiction of a court of a state which had made a child custody determination consistently with the provisions of this section continues as long as the requirement of section (c)(1) of this section continues to be met and such state remains the residence of the child or of any contestant.
   (f) A court of a state may modify a determination of the custody of the same child made by a court of another state, if—
   (1) it has jurisdiction to make such a child custody determination; and
   (2) the court of the other state no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

Colo. 128, 544 P.2d 402, 405 (1975), cited by the majority, stands for such a proposition. *Fry* involved a petition for a Colorado court to modify a California custody decree by the grandparents, who had been appointed guardians and had moved with the child to Colorado. Both parents however, had remained in California. The court found that as between Colorado and California, the latter had the most significant contacts and substantial evidence as to the child and moreover, since *both* parents continued to reside in California, that state was the appropriate forum. *Id.* 544 P.2d at 406.

The Act states that for a decree rendering state to have continuing jurisdiction, the basis for that jurisdiction must remain "substantially in accordance" with the Act. Furthermore, for jurisdiction to be based on 10 O.S.1981 § 1605(A)(2), the "significant connection" to and "substantial evidence" in the state must be as to the *child* and one or more parents. A state must have more than just "some" evidence and the mere fact that one parent remains in the state would not be enough, without more, to maintain continuing jurisdiction.

## II.

The majority herein recognizes that the intent of the Act was to prevent forum shopping by an unhappy parent seeking a more favorable review of another court. Certainly, this is one important element of the Act. But there are additional elements of the Act of equal importance. 10 O.S. 1981 § 1602 states in part that the purpose of the Act is to:

1. Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

2. Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state *which can best decide the case in the interest of the child;*

3. Assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available, *and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;*

4. *Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;* (emphasis added).

The majority's decision to have Oklahoma retain jurisdiction seems to be at odds with most of the above stated purposes as set forth by the Legislature. Oklahoma is not the state which can best decide whether there should be a modification of custody since the bulk of the evidence is in Missouri. Oklahoma should have declined jurisdiction where Missouri has a closer connection with the child given the length of time the children have been living there in contrast to the brief contact the children have had with Oklahoma while visiting their father here. By accepting jurisdiction, and changing, even temporarily, custodial privileges *without adequate provocation,*[4] the trial court has done exactly

---

Section (c)(1) of 1738A would then still require that jurisdiction be satisfied under state law. Since Oklahoma's Act holds that jurisdiction is *only proper* when it substantially complies with the prerequisites of the Act, it is not enough that only one parent reside in the state to have continuing jurisdiction, unless there are also significant contacts and substantial evidence as between the child and the state.

**4.** The trial judge found that an emergency situation existed. The evidence does not support such finding. 10 O.S.1981 § 1605 states:

Prerequisites for jurisdiction

A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

3. The child is physically present in this state and:

a. the child has been abandoned, or

b. it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

The comments to § 3 of the UCCJA hold that: "This extraordinary jurisdiction is reserved for

what this statute was intended to prevent, undermine the stability of the home environment.

## III.

Oklahoma in a number of cases has consistently applied the reasoning of the UCCJA. In *State ex rel. Murphy v. Boudreau*, 653 P.2d 531 (Okla.1982), Petitioner brought an action to modify an *Oklahoma* custody decree. The custody decree was rendered in conjunction with a valid divorce decree, the determination for which neither party had questioned the jurisdiction of the Oklahoma court. While jurisdiction was much disputed and later contested in a New Mexico court, *see Murphy v. Murphy*, 96 N.M. 401, 631 P.2d 307 (1981), Oklahoma had original and continuing jurisdiction pursuant to *its* decree to modify a custody determination. The trial court declined to do so because it found New Mexico a more convenient forum. New Mexico had been the home state of the children for a considerable length of time *and* there were more significant contacts as to New Mexico than Oklahoma. Moreover, the court noted that in any event, Petitioner was in violation of "any existing custody order, either Oklahoma's or New Mexico's."

The majority would now overturn *Breaux v. Mays*, 746 P.2d 708 (Okla.App. 1987). In *Breaux*, the father sought to modify in Oklahoma a custody decree, however, the mother and children had been living in Texas for the past three years. The court stated that "there are certain circumstances under which [a] state can and should lose jurisdiction." *Breaux*, 746 P.2d at 710. The court held that as between Texas and Oklahoma, Texas was the more proper forum. Though the court spoke in terms of losing jurisdiction when *either* of the two major bases for jurisdiction found in section 1605(A) 1 or 2 were absent, (home state status or significant contacts and substantial evidence as to the

child) the facts of that case showed that indeed *neither* of the two major bases existed and that is the way the holding should be construed.

Losing home state status to Texas coupled with, as between Oklahoma and Texas, the more significant contacts were with Texas, was seen by the Court of Appeals in *Breaux* to be sufficient to require father, with whom the child was only visiting in Oklahoma, to go to Texas to litigate custodial changes. This was the *essential* holding in *Breaux* and the opinion should not be overturned.

## IV.

Finally, the court is mistaken when it speculates that Missouri, under *In re Marriage of Phillips*, 723 S.W.2d 579, 582 (Mo. Ct.App.1987), would not exercise jurisdiction, even if this proceeding had been brought there. In *Phillips*, the Missouri trial court's decision that it would not modify a Virginia custody decree was affirmed. However, unquestionably Virginia was still the home state of the child, there was neither significant contacts, nor substantial evidence as between the child and the state of Missouri and no emergency existed. Indeed, though the parents were divorced in 1982, the child had only been in Missouri for the first time for six weeks in 1985 when the petition for modification was sought. There is nothing to indicate by these facts, that given the circumstances in the present case, where the children had been living in Missouri for the past three years, Missouri would not recognize its jurisdiction. In fact, Missouri's statutory language includes the "substantially in accordance" factor as to jurisdictional prerequisites which would give credence to the idea that Missouri would find it had jurisdiction for a modification determination.

## V.

Turning now to the present case, I would hold, under the circumstances, herein, the

---

extraordinary circumstances." Commissioners Note, UCCJA, § 3, 9 U.L.A. 123, 124 (Master's Ed.1979). There was no evidence presented at the hearing that the welfare of the children was being threatened. To the contrary, the pediatrician testified that the one child he had seen,

showed no signs of physical abuse. Further, the trial judge had no basis to find the wife was under going treatment for alcohol or drug abuse where the evidence presented was that she was seeking treatment for "emotional co-dependency."

Respondent court should not have exercised jurisdiction. 10 O.S.1981 § 1609. Missouri clearly is the appropriate forum.

1. Home State

As previously stated, the children had been living in Missouri for the past three years, and therefore Missouri has become their home state.

2. Closer Connections

The question is which jurisdiction has contacts that would "substantially" comply with the jurisdictional requirements of the Act. The official comments to the UCCJA state that:

> [J]urisdiction exists only if it is in the *child's interest, not merely the interest or convenience of the feuding parties,* to determine custody in a particular state. The interest of the child is served when the forum has *optimum* access to relevant evidence about the child and family. There must be *maximum rather than minimum* contact with the state. (Emphasis added.)

Commissioner's Note, UCCJA, § 4, 9 U.L.A. 144, 142 (Master's Ed.1979).

Missouri has been the children's home for the last three years. It is here that the children's school, school records, extended family and friends, teachers, pediatricians, allergy clinic, church, etc. are available. Though certainly Oklahoma has some contacts with the children and one parent, the most significant contacts, as between the children and another parent, are in Missouri. Indeed, from the evidence submitted, it indicates that the children were only in Oklahoma for two weeks each summer.

3. Substantial evidence

Obviously the vast majority of evidence concerning the children will be in Missouri. As noted, the children made their home in Missouri for the past three years. Though the language of the statute speaks in terms of which state has "substantial evidence concerning the child's *present or future* care, protection, training and personal relationships," Missouri would still have the bulk of this evidence even though, the children have now been in Oklahoma for several months.

Additionally however, it is clear that the crucial issue to be contested is the quality of care exercised by the mother and her present ability to care for the children. Though this *could* be litigated in either Oklahoma or Missouri, it is more likely that all of the necessary evidence for this proceeding is in Missouri, not Oklahoma. Therefore, again Missouri is the more appropriate forum.

4. Contravenes the UCCJA purposes

Oklahoma should not retain jurisdiction as to do so would contravene the intended purposes of the UCCJA. The intent was to discourage continuing controversies over custody decisions that resulted in unilateral removal or retention of a child from his present home and preven[t] relitigation that shifts the child from state to state. *Brauch v. Shaw,* 121 N.H. 562, 571, 432 A.2d 1, 6 (1981). Though clearly this does not mean there will never be a need for modification, when the need does arise, it should be done in the state most able to reach an informed decision.

Furthermore, courts have held that custody should not, except in compelling circumstances, be changed when the child is in the temporary care of the noncustodial parent.

> [A] parent with whom a child is visiting in another jurisdiction ordinarily should not be permitted, except in *clearly compelling* circumstances, to use the occasion to seek to divest the other parent of a judicially decreed right of custody. To permit this would place a premium on the abuse of the right of visitation and make it difficult for parties to agree on the free movement of the child from one parent to the other.

*Bergen v. Bergen,* 439 F.2d 1008, 1015 (3rd Cir.1971).

A California case, *Ferreira v. Ferreira,* 9 Cal.3d 824, 829 109 Cal.Rptr. 80, 109 512 P.2d 304, 307 (1973) held that "We have neither been able to find a perfect answer

to the dilemma nor to invent a solution of our own. We can do no better than submit a realistic resolution: the court of the forum should ordinarily refuse to reopen the question of the custody of a child whose custody is vested under an existing decree in a nonresident parent." The UCCJA was passed in California after this case, however, *Schlumpf v. Schlumpf,* 79 Cal. App.3d 892, 145 Cal.Rptr. 190 (1978), held the language of *Ferreira* still valid.

## VI.

Child custody decision are difficult decisions, modifications of custody harder still. Moreover, there may not be a "right" or "wrong" decision. A court can only attempt to "repair, patch and cover over, as best they can, the irreparable harm occasioned [by shifting custody] and reduce the harm to a minimum ..." *Hopson v. Hopson,* 110 Cal.App.3d 884, 905, 168 Cal.Rptr. 345, 360 (1980). All the more important for a court to be in the best position to make such a determination. It is not a question here that Oklahoma has continuing jurisdiction, but that given the facts, Respondent should have declined to exercise jurisdiction.

Regarding the problem of two courts, each having "jurisdiction" but only one of which should act, I find the following quotation from the *Hopson* opinion particularly instructive:

The commissioners realistically anticipated the problem of concurrent jurisdiction existing in more than one state. Therefore, they provided additional steps to assure that only one state makes the custody decision. The fact that one state has jurisdiction over a custody dispute ... does not preclude another state from jurisdiction.... The first step in the UCCJA's orderly procedure for determining which court may exercise jurisdiction requires that the court must ascertain whether it has jurisdiction under the terms of the UCCJA; second, the court must determine whether there is a custody proceeding pending or a decree existing in another state which presently has jurisdiction. If the court finds that it has jurisdiction, and that there is no proceed-

ing pending or a decree existing, then it must determine which state is the most convenient forum to exercise jurisdiction. If it finds another state is a more convenient forum, then under the standards of the UCCJA, it may not exercise jurisdiction (*Carson v. Carson* (1977) 29 Or.App. 861, 565 P.2d 763; affirmed 1978, 282 Or. 469, 579 P.2d 846).

*Id.* 110 Cal.App.3d at 899, 168 Cal.Rptr. at 356.

I would stay the trial court from proceeding to hear the father's motion to change custody to himself. I would, however, continue the trial court's temporary custody order in favor of father in force for a period of forty days from the finality of this court's opinion provided father proceeds in the state of Missouri to litigate the custody issues in that forum during that time period. If no such effort by father is made during such forty day period the temporary custody order of the respondent Oklahoma court would no longer have any validity and the children would be returned to their mother. If on the other hand, father files his application in Missouri to modify the custody of the children, the question of extending the temporary order could then be addressed by the Missouri court.

I am authorized to state that HARGRAVE, C.J., and SIMMS and ALMA WILSON, JJ., join in the views herein expressed.