In the Matter of the Application of Michael Raymond GUTHRIE for a Writ of Habeas Corpus.

Michael Raymond GUTHRIE, Appellee,

v.

Randy ATHA and Joyce Atha, Appellants.

No. 71953.

Court of Appeals of Oklahoma, Division No. 2.

May 15, 1990.

John C. Garrett, Stilwell, for appellee.

Lloyd E. Cole, Jr., Stilwell, for appellants.

RAPP, Presiding Judge.

This is an appeal from an order of the district court in a habeas corpus proceeding granting the natural father primary custody of his two minor children. We reverse.

On June 18, 1980, Michael R. Guthrie and Mary Elenor Guthrie were granted a decree of divorce by the District Court of Adair County. The mother was awarded custody of the two minor children, Aaron Michael Guthrie, born November 14, 1975, and Abram Mark Guthrie, born July 19, 1978. The father was granted reasonable visitation and ordered to pay $100 per month for the support of the two minor children.

In September 1980 Mary Guthrie and her two children moved to Forrest Grove, Oregon, apparently to be near her parents, Patrick and Nona Loop. Mary was badly injured in a motorcycle accident in August 1986 and remained in a coma for four weeks thereafter. During this period, while the children's mother was in a coma, the maternal grandmother, Nona Loop, sought and obtained from the Circuit Court of Oregon an order appointing her the guardian of the children, Aaron and Abram. Although notice was given to the father, the guardianship proceeding was not objected to or contested by the father. The children, at the time of the guardianship proceeding, had been in Oregon in excess of five years.

The effect of this uncontested Oregon guardianship proceeding concerning custody was to confer jurisdiction of the children to Oregon under 10 O.S.1981 § 1604(3), (5), (9) and 10 O.S.Supp.1989 § 1605.[1] The Oregon guardianship was a "dependency" proceeding and, thus, under section 1604(3), a "custody proceeding." In addition, Oregon was also, under the criteria of section 1604(5), the "home state" of the children due to their residency therein for a period in excess of five years.

The children, after the Oregon court assumed jurisdiction, continued to reside in Oregon with their grandmother for approximately two years until she became ill. Mrs. Loop then transferred temporary custody of the children to her daughter, the children's aunt, one of the appellants herein, in accordance with Oregon statute section 126.030.[2] The record also indicates the

---

1. Title 10 O.S.1981 § 1604(3), (5), (9) states:

   3. "Custody proceeding" includes proceedings in which a custody determination is one of several issues, such as an action for divorce or separation, *and includes .child neglect or dependency proceedings;*

   . . . .

   5. "Home state" means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six (6) consecutive months, and in the case of a child less than six (6) months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period;

   . . . .

   9. "Person acting as parent" *means a person, other than a parent, who has physical custody of a child* and who has either been awarded custody by a court or *claims a right to custody. . . .* (Emphasis added.)

2. This Oregon statute states:

   **126.030. Delegation of certain powers by parent or guardian.**

children's mother, by a document styled "Agreement," dated September 17, 1988, knew of and agreed with the grandmother's temporary appointment of her sister, Mrs. Atha, the children's aunt, as their temporary guardian. The aunt returned to her home in Oklahoma with the children, and this action was commenced within days thereafter by the natural father.

The father admitted that, while he has continued as a resident of this state, he has visited with the children only once during their residency in Oregon and that his contacts with the children since their removal to Oregon in 1980 have not been constant or continuous.

The father, at the hearing, was not able to show that the Oklahoma court met the prerequisites to jurisdiction, as set out by 10 O.S.Supp.1989 § 1605, when faced with the Oregon court's assumption of jurisdiction in the guardianship action. The Oklahoma jurisdiction statute states:

### § 1605. Prerequisites for jurisdiction

A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

1. This state:

   a. is the home state of the child at the time of commencement of the proceeding, or

   b. had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

2. It is in the best interest of the child that a court of this state assume jurisdiction because:

   a. the child and his parents, *or the child and at least one contestant, have a significant connection with this state,* and

   b. there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships; or

3. The *child is physically present* in this state and:

   a. *the child has been abandoned,* or

   b. it is necessary in an emergency to protect the child because he has been subjected to or *threatened with mistreatment or abuse or is otherwise neglected or dependent;* or

4. a. It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs 1, 2 or 3 of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and

   b. it is in the best interest of the child that this court assume jurisdiction.

B. Except under paragraphs 3 and 4 of subsection A of this section, *physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction* on a court of this state to make a child custody determination.

C. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

D. The controlling criterion for awarding custody by a court of this state *shall always be what is in the best interest of the child,* other statutory provisions merely being factors which may be considered. (Emphasis added.)

Comparison of the record and this statute fails to demonstrate the continued existence of Oklahoma's jurisdiction.

(1) Except as provided in subsection (2) of this section, a parent or a guardian of a minor or incapacitated person, by a properly executed power of attorney, may delegate to another person, for a period not exceeding six months, any of the powers of the parent or guardian regarding care, custody or property of the minor child or ward, except the power to consent to marriage or adoption of a minor ward.

(2) A parent or a guardian of a minor child may delegate the powers designated in subsection (1) of this section to a school administrator for a period not exceeding 12 months.

**1200** ■■■■■■■■■■■■■

■ The record clearly establishes that the children's "home state" is Oregon and not Oklahoma, based upon their prolonged Oregon residency with their mother and their grandmother under the Oregon court's uncontested guardianship action, thus eliminating section 1605(A)(1) as a jurisdictional basis for the Oklahoma court.

■ While the father is and has remained a resident of this state under the record presented, section 1605(A)(2) is of no avail to confer jurisdiction for two reasons. First, there was no showing of a "significant connection" with Oklahoma by a child *and* at least one contestant. The most the record demonstrated was an Oklahoma residency by the father, and at best, a lackadaisical effort by the father at any form of attempted sustained communication between himself and his children. Second, there was no evidentiary showing of any nature by the father that it would be in the children's best interest for Oklahoma to assume jurisdiction under subsection 2.

Moreover, there was no claim by the father that the children, while physically present in Oklahoma prior to and during the hearing, were, under section 1605(A)(3), abandoned or in an emergency situation. It is also apparent from the record that Oregon did assume jurisdiction via its guardianship action, thereby eliminating Oklahoma statutory section 1605(A)(4) as a ground.

Continuing with this analysis of the statute, after elimination of section 1605(A), it is clear that this matter falls within the ambit of section 1605(B), which is unequivocal in its language that the mere presence "of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state."

The trial court, after hearing the resident father demonstrate his discontinued relationship with the children, then wholly ignored both the intervening action of the Oregon court and its legitimate assumption of jurisdiction, and the Oklahoma trial court's lack of authority under 10 O.S.1981 § 1616 [3] to modify the decree. As stated in *G.S. v. Ewing*, 786 P.2d 65, 69–70 (Okla. 1990):

> Section 1616 clearly prohibits an Oklahoma court from modifying a custody provision if the court entering the original decree continues to have jurisdiction. The corollary to the principle announced in § 1616 is that *significant connection jurisdiction continues in the state of prior decree if one parent continues to reside in the state even if the child lives in another state for six months or more.* (Footnote omitted; emphasis in original.)

Here, the prior state is Oregon, and the grandmother, Mrs. Loop, continues to reside in Oregon. Mrs. Atha, the appellant and party claiming a right to temporary custody under 10 O.S.1981 § 1604(9) [4] via the uncontested power of attorney authorized by the Oregon statute, was in Oklahoma with the children less than twenty days prior to this action.

Accordingly, the decision of the trial court is reversed and custody is to remain with the duly appointed guardian of the children, Nona Loop, and her designee, Joyce Atha.

The motion to dismiss contained in the response to the petition in error is denied.

MEANS, J., concurs specially.

BACON, J., dissents.

---

**3.** Title 10 O.S.1981 § 1616 states:

**§ 1616. Modification of decree of another state**

A. *If a court of another state has made a custody decree,* a court of this state shall not modify that decree unless:

1. It appears to the court of this state that the court which rendered the decree does not *now have jurisdiction under jurisdictional prerequisites substantially in accordance with this act* or has declined to assume jurisdiction to modify the decree; and

2. The court of this state has jurisdiction.

B. If a court of this state is authorized under subsection A of this section and Section 10 of this act to modify a custody decree of another state it shall give due consideration to the transcript of the record and other documents of all previous proceedings submitted to it in accordance with Section 24 of this act. (Footnotes omitted; emphasis added.)

**4.** *See supra* note 1.

MEANS, Judge, specially concurring.

This appeal results from a proceeding in which the natural father of two minor children challenged the right of appellants Atha to have custody and control of his two sons by filing a petition for writ of habeas corpus. The trial court granted the writ and after a hearing ordered custody and control of the children be vested with Father. Upon review of the record and applicable law, I would reverse this order.

The appellate court's jurisdiction to review child custody in habeas corpus proceedings was recognized in *Hedtke v. Kukuk*, 93 Okla. 264, 220 P. 615 (1923). In that case, the supreme court established that the purpose of such proceedings is to determine who has the present right to custody and control of minor children.

Father filed his petition on September 27, 1988. That same day, the district judge issued the writ of habeas corpus and set a hearing for 1:00 p.m. the following day, September 28, 1988. Father asserts that, because the natural mother is incapacitated in Oregon, he is entitled to the exclusive custody of his children. Appellant Joyce Atha contends that she has legal custody and that sole jurisdiction to modify custody is with the courts in Oregon.

The facts are not in dispute. Father was granted an uncontested divorce from Mother on June 18, 1980. Mother was granted custody of the boys and awarded her personal possessions. Father was awarded the home, automobile, his personal possessions and the debts of the marriage. He was also ordered to pay child support in the amount of $100 per month.

Three months after divorce, Mother and her two sons moved to Oregon to live with her mother, Nona Loop. Six years later, on August 3, 1986, Mother was injured in an accident. The maternal grandmother, Nona Loop, was duly appointed under Oregon law, O.R.S. 126.030, as the children's guardian. Father was served notice of the guardianship proceeding by registered mail. He neither appeared nor filed a response in that proceeding.

Nona Loop was diagnosed with cancer in 1988. Pursuant to O.R.S. 126.030, she properly gave appellant Joyce Atha a temporary power of attorney regarding custodial authority of the children.

It is clear that the purpose of the writ of habeas corpus was satisfied when appellant Atha demonstrated that she was legally entitled to the custody of the two children. This authority was derived from the Oklahoma court order awarding custody to the mother together with the derivative guardianship and power of attorney actions in Oregon. Hearings on extraordinary writs are not the proper vehicle to try motions to modify child custody. There is a legal remedy which provides a method to present child custody problems in a timely fashion and allows sufficient time for adequate preparation and investigation. It should also be noted that neither Mother nor grandmother Loop were parties to this action. The district judge erred in stretching the writ hearing to include issues of child custody modification.

I fully concur that under this record Oklahoma no longer fulfills the prerequisite for jurisdiction to determine custody as required by 10 O.S.1981 § 1605, and that Oregon is the proper forum.

BACON, Judge, dissenting.

I respectfully dissent. In *G.S. v. Ewing*, 786 P.2d 65 (Okla.1990), the court held that once an Oklahoma court enters a custody order, it has continuing jurisdiction to modify that order. Jurisdiction is only lost if both parents have left the state or if the resident parent has cut all connections with the child or children.

In the present case, while the father could have shown more interest in the children, the record does not show that he severed all connections with the children.

It should be remembered that the interest of the child is our paramount concern. In the present case the mother is permanently institutionalized from brain damage in the state of Oregon. The maternal grandmother, who also lives in Oregon, is undergoing cancer treatment. The children were turned over to an aunt living in Oklahoma who enrolled them in school in

the same town where the father lives, and the same county where the original custody was determined. Numerous relatives of the children live in the same town.

For this court to require these people to go back to Oregon to litigate custody seems to me to place form over substance and defy "good old common sense," as well as the teachings of *G.S. v. Ewing, supra.*

I would find that the trial court did not abuse its discretion and affirm the trial court.