2000 OK CIV APP 125

**Roy Lee McCULLOUGH, Plaintiff/Appellant,**

v.

**Susan J. McCULLOUGH, now Roark, Defendant/Appellee.**

No. 93,897.

Court of Civil Appeals of Oklahoma, Division No. 3.

July 10, 2000.

Rehearing Denied Aug. 11, 2000.

Certiorari Denied Nov. 7, 2000.

Larry L. Oliver, Larry L. Oliver & Associates, P.C., Tulsa, OK, For Plaintiff/Appellant.

Hugh V. Rineer, Leonard & Rineer, P.C., Tulsa, OK, For Defendant/Appellee.

## OPINION

ADAMS, Judge:

¶1 Roy McCullough (Father) and Susan McCullough (Mother) were divorced by a decree filed in Tulsa County, Oklahoma on June 8, 1989. As acknowledged in that decree, Mother and the parties' minor son, A, were then living in California. Father was a resident of Tulsa County. The decree placed A in the custody of Mother and set visitation for Father, which was to be exercised in California until A reached four years of age. On March 15, 1994, pursuant to an agreement of the parties entered into after Father filed a Motion to Modify, the trial court filed a Modification Order setting Father's visitation and specifically allowing extended visitation with Father in the State of Oklahoma.

¶2 On July 9, 1998, Mother filed a Motion to Transfer Jurisdiction, asking the trial court to transfer jurisdiction of the custody issues, including visitation, to the courts of California, relying on the provisions of the Uniform Child Custody Jurisdiction Act (UCCJA), 43 O.S.1991 § 501 *et seq.* The parties agree that Mother had previously filed an action in California concerning Father's visitation with A and had obtained a temporary restraining order prohibiting Father's contact with A. In addition, the parties agree that the California court had declined jurisdiction but stated it would proceed if Oklahoma acquiesced. Father filed a Motion to Modify on September 4, 1998, requesting that custody of A be placed with him.[1] He also filed a response to Mother's motion in which he alleged Mother was guilty of improper conduct which should prevent the transfer.

¶3 Effective November 1, 1998, the Legislature repealed the UCCJA and replaced its provisions with the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), 43 O.S.Supp.1998 § 551-101 *et seq.* On June 4, 1999, Mother filed an amendment to her Motion to Transfer, restating her earlier allegations but basing her request for relief on the UCCJEA. After an initial conference concerning the issues, Father requested an evidentiary hearing to address his arguments of Mother's bad faith which he contended would defeat her request to transfer jurisdiction. The trial court denied that request and on October 18, 1999, filed an order granting Mother's Motion to Transfer.

¶4 As requested by Father, the order included specific findings of fact and conclusions of law. In pertinent part, the trial court found:

18. The Court has the discretion to relinquish jurisdiction if either (1) the Oklahoma Court determines that a significant connection with the state does not exist and substantial evidence is not available in the state concerning the child's care, protection, training and personal relationships, 43 O.S. Supp.1998 § 551-202(A)(1),[2] or (2) the Oklahoma Court determines that it is an inconvenient forum under the circumstances. 43 O.S. Supp.1998 § 551-207.

19. For the last ten years, [Mother]'s permanent residence and the child's home state, as defined by 43 O.S. Supp.1998 § 551-102(7), has been and continues to be in California.

20. The child has spent very little time in Oklahoma throughout his life.

21. [Father] acknowledges minimal contact with the child during his life, including no contact for the last three years. [Father] attributes lack of contact to [Mother]'s visitation obstruction.

22. All evidence relative to the child's school performance, medical records, involvement with extended family members and evidence concerning his future case (sic) is anchored in California.

---

1. Father also filed an Application for Citation of Contempt alleging Mother had wilfully violated the trial court's 1994 order concerning visitation. It is unclear whether the trial court has declined jurisdiction on the contempt case. However, Father does not allege any error in that regard, and we do not consider it here.

2. This section provides:

A. Except as otherwise provided in [43 O.S.Supp.1998 § 551-204], a court of this state which has made a custody determination consistent with [43 O.S.Supp.1998 § 551-201] or [43 O.S.Supp.1998 § 551-203] has exclusive, continuing jurisdiction over the determination until:
1. A court of this state determines that neither the child, the child and one parent, nor the child a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships.

Where an Oklahoma court makes the determination required by this section, it might be argued that the court no longer has the "discretion" to "relinquish" jurisdiction but that it has no jurisdiction. Under that interpretation, the Legislature's repeal of the UCCJA and adoption of the UCCJEA must be viewed as superseding the holding in *G.S. v. Ewing,* 1990 OK 1, 786 P.2d 65, that an Oklahoma court which made an initial custody determination retained "continuing jurisdiction" to modify that order so long as one parent resided in Oklahoma and still maintained significant parental contact with the child or children in question. However, it is apparent that the trial court in this case did not conclude it lacked jurisdiction but chose not to exercise its jurisdiction. Mother does not argue that the trial court lacked jurisdiction.

23. California has a closer connection with the child given his lifelong residency in the state.

24. The Court finds that the State of California is a more appropriate forum because, as the child's home state, California has significant connections with the child. *G.S. v. Ewing*, 786 P.2d 65, 72 (Okla.1990).

25. The Court further finds that litigation in Oklahoma would be inconvenient to the child. Court appearances and psychological evaluations in Oklahoma could substantially disrupt the child's academic and social routines.

26. The Court further finds that, while it is most concerned with [Father]'s allegations concerning [Mother]'s visitation interference, it is not focused on the inconvenience to [Father] or [Mother], but rather to the potential inconvenience and disruption to the child.

(Emphasis in original).

■■■ ¶ 5 Father argues the trial court erred in applying the UCCJEA rather than the UCCJA because the UCCJA was still in effect at the time this proceeding began, *i.e.,* when Mother filed her Motion to Transfer and when Father filed his Motion to Modify, and the UCCJEA was not yet effective. Section 551–402 of the UCCJEA specifically addresses this issue and says "[a] motion or other request for relief made in a child custody proceeding or to enforce a child custody determination which was commenced before the effective date of this act is governed by the law in effect at the time the motion or other request was made." Even if we were to conclude that Mother's 1999 filing of the amendment to her Motion to Transfer amounted to a new motion under this section, which we do not decide, Father's Motion to Modify should still have been determined

under the law in effect when he filed it, the UCCJA. Therefore we must conclude the trial court erred in basing its decision on the provisions of the UCCJEA.

¶ 6 However, that conclusion does not end our inquiry. Under the UCCJA, a trial court had the discretion to decline to exercise its jurisdiction in favor of another state "if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum." 43 O.S.1991 § 509(A). According to 43 O.S.1991 § 509(C):

> In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
>
> 1. If another state is or recently was the child's home state;
>
> 2. If another state has a closer connection with the child and his family or with the child and one or more of the contestants;
>
> 3. If substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state;
>
> 4. If the parties have agreed on another forum which is no less appropriate; and
>
> 5. If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in [43 O.S.1991 § 502].

¶ 7 When we compare these statutory factors with the trial court's significant findings, it is clear that the trial court would have reached the same result under the UCCJA. Any error in applying the UCCJEA is therefore harmless and does not mandate reversal.[3]

---

**3.** In fact, the trial court may have applied the factors listed in the UCCJA rather than all of the factors in the longer list in § 551–207(B) of the UCCJEA. This section requires a court considering an inconvenient forum allegation to allow the parties to submit information and consider all relevant factors, including:

  1. Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

  2. The length of time the child has resided outside this state;

  3. The distance between the court in this state and the court in the state that would assume jurisdiction;

  4. The relative financial circumstances of the parties;

  5. Any agreement of the parties as to which state should assume jurisdiction;

¶ 8 Father also argues the trial court abused its discretion in determining that Oklahoma was an inconvenient forum and that California was preferable. Overlooking the undisputed fact that his son has lived in California for virtually all of his ten years of life, Father argues that his presence and the presence of his family in Oklahoma, and the connection his son would have had with Oklahoma if Mother had not interfered with visitation, was sufficient to *require* the trial court to exercise its jurisdiction.

¶ 9 Father supports this argument by citing *G.S. v. Ewing*, 1990 OK 1, 786 P.2d 65. After holding that the Oklahoma trial court had "continuing jurisdiction" under the UCCJA to modify its own custody determination made in the divorce decree because one parent still resided in Oklahoma and had maintained significant parental contact with the children, the *Ewing* Court considered whether the trial court had abused its discretion in refusing the mother's request for dismissal on the basis of an inconvenient forum. Based, at least in part, on substantial evidence concerning the children's medical care located in Oklahoma, the *Ewing* Court concluded the trial court did not abuse its discretion.

¶ 10 As in *Ewing*, we consider this trial court's decision to decline to exercise its jurisdiction under the "abuse of discretion standard." All of the evidence concerning A's schooling, permanent medical care, and the circumstances surrounding Mother's care in the past are located in California. This would be true even if Father had been allowed to exercise all of the visitation provided under the 1994 order. Under those circumstances we cannot say that the trial court abused its discretion in finding Oklahoma to be an inconvenient forum and California to be the appropriate forum in which to litigate the custody issues involved here, including visitation.

¶ 11 Citing *Boucher v. Boucher*, 1989 OK CIV APP 14, 771 P.2d 242, Father argues Mother's "reprehensible conduct" in preventing his contact with the child, allowing her parents to "raise" A and making "bogus" allegations of abuse against Father should prevent the transfer of this case to California. The *Boucher* Court concluded that the mother's actions in secretly removing the child from Oklahoma following the divorce decree and hiding the whereabouts of the child from the father for an extended period was sufficient to allow an Oklahoma court to exercise its "continuing jurisdiction" over custody even though the child had resided in another state for six months by the time the father located the child and commenced proceedings in Oklahoma to modify the decree to give the father custody.

¶ 12 The mother's actions in *Boucher* were directly related to the creation of a jurisdictional basis in the state she claimed had jurisdiction. That is not the case here. Mother moved to California with the child before the divorce was granted, and the Oklahoma decree specifically contemplated that the first four years of A's life would be spent primarily, if not exclusively, in California. The basis for California's jurisdiction and its status as a more appropriate forum flows from A's permanent residence there, not from any acts by Mother which frustrated Father's attempts to maintain a relationship with A, her alleged excessive reliance upon her parents in raising A or "bogus" allegations which in no event relate to jurisdiction. Even if Mother was guilty of "reprehensible conduct" as alleged by Father, which we do not decide, it was unrelated to the creation of jurisdiction in California. The trial court was not required to deny Mother's Motion to Transfer based on Father's allegations of her misconduct.

¶ 13 Similarly, we must conclude that Father was not entitled to a hearing to produce evidence of such misconduct because, even if it occurred, it would not have been a

6. The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

7. The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

8. The familiarity of the court of each state with the facts and issues in the pending litigation.

sufficient basis upon which to *require* the trial court to keep the case. The appellant made a similar complaint in *State ex rel. Murphy v. Boudreau,* 1982 OK 117, 653 P.2d 531, and the Court held that an evidentiary hearing was not required because the proffered evidence was not relevant to the only jurisdictional basis available to the trial court. Even if we accept as true Father's allegations of Mother's misconduct, the result would be the same. California has a closer connection with the issues in this case and would have that connection even if Father had been allowed to exercise all of the visitation awarded to him under the 1994 order.[4] The trial court did not err in denying Father an evidentiary hearing on Mother's alleged misconduct.

¶ 14 The trial court did not abuse the discretion it had under the UCCJA by granting Mother's Motion to Transfer and requiring Father to litigate his Motion to Modify in California. The trial court's order is affirmed.

AFFIRMED

¶ 15 HANSEN, V.C.J., and JOPLIN, J., concur.

---

4. We focus this discussion on Father's allegations relating to frustration of his visitation rights because it is that alleged misconduct which he contends prevented A from having more contact with Oklahoma. We are unable to see any connection between the inconvenient forum determination and Father's claim that Mother is allowing her parents to raise A and made "bogus" allegations of abuse by him against A. The trial court's focus, quite properly, was on the potential disruption in A's life which could be caused by litigation in Oklahoma and not on the reward or punishment of either parent.