OSCN Found Document:IN RE THE MARRIAGE OF RADER

 

 
 

 
 IN RE THE MARRIAGE OF RADER
2020 OK 106
Case Number: 118344
Decided: 12/15/2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 106, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN RE THE MARRIAGE OF:

TY L. RADER, Petitioner/Appellant,
v.
BRENDA Y. RADER, Respondent/Appellee.

ON APPEAL FROM THE DISTRICT COURT OF BEAVER COUNTY,
STATE OF OKLAHOMA
HONORABLE RYAN D. REDDICK, DISTRICT JUDGE

Â¶0 Petitioner/Appellant Ty L. Rader ("Father") appeals from the trial court's order finding Kansas has exclusive, continuing child custody jurisdiction and that Oklahoma does not have jurisdiction to make an initial child custody determination under Oklahoma's Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), 43 O.S.2011 Â§Â§ 551-101 to 551-402. We hold that because the Kansas child custody proceeding was dismissed by the parties, it was of no effect in the present matter, and the Oklahoma judge erred in failing to determine whether or not Oklahoma had become the minor child's new home state under the UCCJEA at the commencement of this proceeding. We reverse the part of the trial court's order finding the Oklahoma court does not have jurisdiction over child custody and remand to the trial court to consider whether or not Oklahoma became the minor child's new home state, and, if so, to consider Respondent/Appellee Brenda Y. Rader's ("Mother") forum non conveniens argument, pursuant to 43 O.S. Â§ 551-207. If Petitioner fails to establish Oklahoma as the new home state, the trial judge shall transfer the matter to Kansas, pursuant to the UCCJEA.

ORDER OF THE DISTRICT COURT IS REVERSED 
AND REMANDED WITH INSTRUCTIONS.

Jim Loepp, Jim Loepp Law Office, Oklahoma City, Oklahoma, for Appellant.

David W. West, Liberal, Kansas, for Respondent.

KANE, J.:

Â¶1 Here we have a child custody dispute between divorced parents where divorce actions have been filed in two different states at different times. The primary question on appeal is whether the state of Kansas retains exclusive, child custody jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA")[1] after a Kansas court issued temporary orders concerning child custody but then the parents, for reasons unrelated to jurisdiction, jointly dismissed the Kansas divorce and child custody proceeding.

Â¶2 While the Kansas divorce court was the first court to make an initial child custody determination under the UCCJEA, the parties jointly dismissed that action without prejudice before Petitioner/Appellant Ty L. Rader ("Father") filed the present divorce action in Oklahoma. As a result, there were not simultaneous child custody proceedings pending in a sister state.[2] The only pending child custody proceeding is in Oklahoma. The record is silent as to the trial court making a finding that the minor child had or had not resided with a parent for at least six (6) months in Oklahoma prior to the filing of Oklahoma Petition, relying instead upon the existence of a dismissed Kansas case to reject child custody jurisdiction. Thus, we reverse and remand for such a determination of whether or not Oklahoma is the minor child's new "home state"[3] under the UCCJEA. If the trial court finds that Oklahoma is the home state, then the custody case will proceed in Oklahoma, and the trial court will need to rule upon the forum non conveniens issue pursuant to 43 O.S. Â§ 551-207.[4] If the Petitioner cannot establish residency under the UCCJEA sufficient to establish Oklahoma as the new home state, then the case should be transferred to Kansas pursuant to the temporary jurisdiction provided for in 43 O.S. Â§ 551-204(B).[5]

I. FACTS AND PROCEDURAL HISTORY

Â¶3 This case is the third divorce attempted by these parties. They have one minor child. Father first filed for divorce in Seward County, Kansas ("Kansas Divorce"), on September 13, 2017 and received a default judgment on December 1, 2017. Upon learning of the default divorce judgment obtained by Father, Respondent/Appellee Brenda Y. Rader ("Mother") filed a Motion to Set Aside the Default Decree of Divorce in Kansas. Mother's motion was granted by the Kansas divorce court on January 26, 2018. The Journal Entry from the hearing provides, in relevant part: "[T]he court orders that the Journal Entry and Decree of Divorce in this matter, file stamped December 1, 2017, be set aside in its entirety. All orders contained therein are hereby set aside and the parties' marriage is reinstated." Mother then moved to file her answer to the divorce action out of time, without objection from Father. As part of the Journal Entry, the Kansas divorce court noted there were no temporary orders on file and "set [the] matter for Temporary Orders hearing on February 16, 2018."

Â¶4 Mother and Father continued to litigate the divorce in Kansas for approximately two years. During this time period, the court issued temporary child custody orders, including a parenting plan. On June 19, 2018, the Kansas divorce court entered a Journal Entry wherein the parties announced to the court that they "had reached an agreement on the terms and conditions for a permanent parenting plan." The Kansas divorce court noted its subject matter jurisdiction in the Journal Entry and adopted the permanent parenting plan for the minor child. While the Kansas Divorce was actively pending, Father moved to Beaver County, Oklahoma, in late May or early June 2018.[6] The Kansas Divorce trial was set for October 16, 2018, but on October 15, 2018, the parties advised the Kansas divorce court that they had reconciled and the Kansas action was dismissed without prejudice at the request of both parties.

Â¶5 Three days later, on October 18, 2018, Father filed a new divorce in Beaver County, Oklahoma ("Oklahoma Divorce I"). Father dismissed Oklahoma Divorce I on January 24, 2019, and refiled on the same day in Beaver County, Oklahoma ("Oklahoma Divorce II"). After Father filed Oklahoma Divorce II, Mother filed in the Kansas divorce court a Motion to Set Aside Dismissal and Reinstate Proceedings. The Kansas divorce court subsequently denied Mother's motion on January 25, 2019, "due to the fact the parties were represented by attorneys at the time they filed their joint dismissal." In denying Mother's Motion to Set Aside the Dismissal, the Kansas divorce court opined in the Journal Entry it would "accept this case if the Oklahoma judge presiding over the current divorce action in Beaver County, Oklahoma requests or desires to transfer the case to Kansas."

Â¶6 Mother then filed a Motion to Dismiss the proceedings in Oklahoma Divorce II for lack of jurisdiction on March 8, 2019. The motion was heard on April 8, 2019. The trial court granted Mother's motion to dismiss in part, finding that it lacked jurisdiction over child custody and child support issues, but concluded it did have jurisdiction over the divorce proceedings and distribution of the martial estate. The Oklahoma trial court noted in its Order filed on September 26, 2019 that: (1) it was exercising the court's subject matter jurisdiction, but identified Seward County, Kansas, as the home state of the minor child under the UCCJEA; (2) Seward County, Kansas, was the first state to make an initial determination under the UCCJEA and to exercise initial child custody jurisdiction; and (3) "[a]s to the claim for child custody, visitation, and child support, this Court is not able to exercise initial child custody jurisdiction, and under Oklahoma law, Kansas has exclusive, continuing child custody jurisdiction." Father appealed.[7] This Court, on its own motion, retained the appeal.

II. STANDARD OF REVIEW

Â¶7 Whether a trial court has subject matter jurisdiction under the UCCJEA is a question of law this Court reviews de novo. See State ex rel. Cartwright v. Oklahoma Ordinance Works Auth., 1980 OK 94, Â¶ 4, 614 P.2d 476, 479 (determination of jurisdiction is a question of law and on appeal, questions of law are reviewed de novo); National Diversified Bus. Servs., Inc. v. Corporate Fin. Opportunities, Inc., 1997 OK 35, n. 18, 946 P.2d 662, 666 (an appellate court has plenary, independent and nondeferential authority to reexamine a trial court's legal rulings). The trial court's decision to exercise or decline jurisdiction under the UCCJEA is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. See G.S. v. Ewing, 1990 OK 1, Â¶Â¶ 16-20, 786 P.2d 65, 72; McCullough v. McCullough, 2000 OK CIV APP 125, Â¶ 10, 14 P.3d 576, 580.

III. DISCUSSION

A. Conceptual Underpinning of the UCCJEA

Â¶8 The purpose of the UCCJEA is to avoid jurisdictional competition and conflict with courts in matters of child custody and, to that end, the provisions of the Act were established to discourage the use of the interstate system for continuing controversies over child custody and to promote cooperation within the judicial system of state courts to render custody determinations in the state that can best decide the matter, while avoiding relitigation of custody determinations already decided by sister states. See 43 O.S. Â§ 551-101, official cmts. 1-6. These uniform laws are necessary because of the mobility of Americans and the frequency of child custody disputes between parents, which arise when there is a divorce or when unmarried biological parents want to have custody adjudicated in a court. Id. 

Â¶9 Prior to the enactment of the UCCJEA in 1980, the Legislature enacted the Uniform Child Custody Jurisdiction Act ("UCCJA"), 10 O.S.Supp.1980 Â§Â§ 1601-1627.[8] The main problems it attempted to address where "child snatching" and "multi-state jurisdictional squabbles." Holt v. District Court for Twentieth Judicial District, Ardmore County, Carter County, 1981 OK 39, Â¶ 14, 626 P.2d 1336, 1340. The UCCJA addressed these problems in several ways, but did so primarily by limiting the jurisdiction of courts to act in child custody matters. See id. The UCCJA had several purposes, which were set out specifically, so that each section of the UCCJA would be read with those purposes in mind. Id. The UCCJEA tracks these same purposes.[9] See 43 O.S. Â§ 551-401 ("In applying and construing this Uniform Act [UCCJEA], consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it.").

Â¶10 An overarching aim of the UCCJA was to "shift from providing for the child's best interests through ease of modification [of a child custody order] to an emphasis on continuity of the child's environment." Holt, 1981 OK 39, Â¶ 14, 626 P.2d at 1340.[10] In this regard, the UCCJA "substantially curtailed" the jurisdiction of an Oklahoma court to modify a custody decree rendered by a court of another state. Id. Â¶ 18 (internal citations omitted). However, the UCCJA, as originally enacted and later amended, contained no provision specifying the duration of a trial court's jurisdiction in a particular child custody matter. See S.W. v. Duncan, 2001 OK 39, Â¶ 18, 24 P.3d 846, 852.

B. The Uniform Child Custody Jurisdiction and Enforcement Act

Â¶11 In 1998 the UCCJA was repealed and the Oklahoma Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) was enacted. See 43 O.S.Supp.1998 Â§Â§ 551-101 to 551-402.[11] Importantly, the UCCJEA specifically addresses the trial court's duration of jurisdiction and provides for exclusive, continuing jurisdiction of a court issuing an initial child custody determination until certain events occur as set forth in that section. See 43 O.S. Â§Â§ 551-201 to 551-202; Duncan, 2001 OK 39, Â¶Â¶ 21-22.

Â¶12 The UCCJEA applies to a "child custody proceeding." See 43 O.S. Â§ 551-102(4). In Duncan, we held divorce actions are child custody matters within in the scope of the UCCJEA and jurisdiction of a divorce court continues for child custody matters. See Duncan, 2001 OK 39, Â¶Â¶ 19-21. When parents and children live (and have lived) in one state, the courts of that state may take jurisdiction over a child custody matter. However, because it is common for a parent to live in a different state from the one in which the other parent and the child live, more than one state may have the authority to adjudicate a dispute between them, and competing decisions between two courts often simply confuse, rather than conclude, the dispute.

Â¶13 The UCCJEA attempts to address these issues by defining which state is the home state of the child and providing jurisdictional priority for the home state, (i.e., the court who is first-in-time and has jurisdiction to issue an initial custody determination under the statutory provisions of the Act). See 43 O.S. Â§Â§ 551-101 to 551-402. Once jurisdiction has been established under the Act, the home state maintains exclusive, continuing jurisdiction, except in limited circumstances. See 43 O.S. Â§ 551-202. Thus, the Act strives to prevent simultaneous child custody proceedings in sister states. See 43 O.S. Â§ 551-206.

C. Initial Child Custody Determination and Home State

Â¶14 The UCCJEA prioritizes home state jurisdiction and provides for exclusive, continuing jurisdiction in the state issuing the initial child custody determination. See 43 O.S. Â§Â§ 551-201 to 551-202. The term "home state" is defined under the Act as follows:

"Home state" means the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six (6) months of age, the term means the state in which the child lived from birth with the parent or person acting as a parent. A period of temporary absence of the parent or person acting as a parent is part of the period.

43 O.S. Â§ 551-102(7).

Â¶15 To establish "home state" jurisdiction, the court must first determine if a "child custody determination" has been made. See Duncan, 2001 OK 39, Â¶ 25 (a court exercising jurisdiction under the UCCJEA must determine if a child custody proceeding has been commenced in another state in conformity with the Act). Under the UCCJEA, a "child custody determination" is defined as follows:

"Child custody determination" means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, or modification order.

43 O.S. Â§ 551-102(3).

Â¶16 The term "initial determination" is also clearly defined under the Act as "the first child custody determination concerning a particular child." 43 O.S. Â§ 551-102(8) (emphasis added). A critical part of the trial court's analysis of jurisdiction under the UCCJEA is for the trial court to inquire if any court (in-state and/or out-of-state) has made an "initial determination" of child custody concerning the child. See 43 O.S. Â§Â§ 551-102(8), 551-201(A), 551-206(A)-(B); Duncan, 2001 OK 39, Â¶ 25; Redwine v. Wood, 2001 OK CIV APP 115, Â¶Â¶ 8-10, 33 P.3d 53, 55 (for "home state" jurisdiction under the UCCJEA, the trial court must look to the mandatory provisions of the UCCJEA for a determination of initial child custody).

Â¶17 In examining the custody dispute currently before us, we acknowledge its extensive procedural history, including the previously filed and partially-litigated divorce action in Kansas that spanned over two years and the temporary child custody orders resulting therefrom, as well as the two later divorce filings here in Oklahoma.[12] Section 551-201 of the UCCJEA governs initial child custody jurisdiction and it restricts Oklahoma's ability to make an initial determination of child custody. It provides, in relevant part:

A. Except as otherwise provided in section 16 of this act, a court of this state has jurisdiction to make an initial child custody determination only if:

1. This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state, but a parent or person acting as a parent continues to live in this state . . . .

43 O.S. Â§ 551-201(A)(1).

Â¶18 Mother suggests that since Kansas made an "initial determination" previously, Oklahoma has no ability to render such a determination now. Father argues on appeal that, pursuant to 43 O.S. Â§ 551-201(A)(1), Oklahoma has jurisdiction to make an "initial determination" of child custody because the minor child had been present in Oklahoma with him for over six months with no case pending in any other jurisdiction, so that Oklahoma is now the minor child's home state. See 43 O.S. Â§Â§ 551-102(7), 551-102(8), 551-201(A)(1). For the reasons set forth herein, we agree with Father that the prior Kansas litigation has no effect on the present case, although it has not yet been adjudicated whether or not Oklahoma has become the minor child's home state.

D. Effect of Dismissal in the Kansas Divorce Action

Â¶19 Generally, a court cannot exercise jurisdiction over a dismissed case,[13] although the interjection of the UCCJEA complicates this proposition. While we do acknowledge a Default Decree of Dissolution was entered in the Kansas divorce court, which provided for joint legal custody of the child to both parents and physical custody to the Mother, it was later set aside at Mother's request after Mother learned of the default decree.

Â¶20 The Kansas divorce court had no divorce or child custody proceeding since the date of the filing of the parents' joint dismissal, other than Mother's unsuccessful attempt to vacate the dismissal. The Kansas Divorce had concluded and the Kansas divorce court's prior temporary child custody orders were nullified as of the moment the joint dismissal was filed-- which was before Father filed Oklahoma Divorce II.

Â¶21 While the UCCJEA gives jurisdictional priority and exclusive, continuing jurisdiction to the courts of a child's home state, the term of duration a child's home state is not indefinite.[14] See 43 O.S. Â§ 551-203 (providing jurisdiction and statutory authority for a court of this state to modify a child custody determination in certain circumstances; thus, acknowledging the need for potential changes to a child custody determination).

Â¶22 In the case currently before us, the Oklahoma trial court stopped short in its analysis of home state jurisdiction under the UCCJEA and erroneously concluded that Kansas was the home state of the minor child because a prior divorce and child custody proceeding had been previously filed in Kansas, and the Kansas court had entered temporary child custody orders. It then erroneously concluded that Kansas had continuing, exclusive jurisdiction. This is the same argument made by Mother on appeal, which we find unpersuasive.

Â¶23 Specifically, the Oklahoma trial court erred by failing to address its own jurisdiction in light of the fact that the Kansas divorce action and child custody proceeding had been jointly dismissed prior to either of Father's divorce actions being filed in Oklahoma. The UCCJEA clearly and unambiguously defines the home state of a minor child and directs the trial court to look at a very specific period/window of time--the six consecutive months immediately before the commencement of a child custody proceeding, to determine the child's "home state" for an "initial determination" of child custody jurisdiction. See 43 O.S. Â§Â§ 551-102(7), 551-102(8), 551-201(A)(1). Thus, if a case in another jurisdiction is jointly dismissed before final decree, a child may acquire a new "home state" if a child and one parent (or person acting as a parent) satisfies the six month requirement for home state status. Id.

Â¶24 While this specific issue, the effect of the parties' joint dismissal of a child custody proceeding previously filed in a sister state, is a question of first impression for this Court, other states have addressed it. In C.H. v. O'Malley, 140 N.E.3d 589, 592 (Ohio 2019), the Ohio Supreme Court held that a father's dismissal without prejudice of his child custody action left the parties as if no action had been brought at all. The Ohio Supreme Court, under very similar facts to the case currently before us,[15] found that the father's voluntary dismissal of his first application for divorce effectively made that filing a nullity for purposes of satisfying the six month requirement for home state status necessary for jurisdictional analysis under the UCCJEA. Id. at 592-93.

Â¶25 Alternatively, in Campbell v. Tardio, 323 P.3d 317, 318 (Or. Ct. App. 2014), the Oregon Court of Appeals came to a different conclusion under somewhat similar facts. In Tardio, the parties had agreed to a joint dismissal/stipulation of judgment in Oregon as to child custody in 2006. Id. The judgment awarded the father sole custody, along with visitation to the mother under a parenting plan.[16] Id.

Â¶26 After the mother moved several times to different states with the minor child, the father in Tardio petitioned the Oregon trial court to reestablish child custody. Id. The trial court granted the father's motion for custody. Id. On appeal, the Oregon Court of Appeals held that "while the order which dismissed the 2006 judgment terminated the custody award, it did not nullify the prior judgment ab initio." Id. The Oregon Court of Appeals held that the prior judgment from 2006 could not be ignored because the parties had never filed a motion to set aside the original judgment based on a lack of jurisdiction, fraud, or other grounds (all of which are bases upon which to set aside a judgment). Id. As a result, the Oregon Court of Appeals held Oregon had exclusive, continuous jurisdiction under the UCCJEA.[17] Id.

Â¶27 We find that the current case is more analogous to the O'Malley decision, and we agree with the approach taken by the Ohio Supreme Court. In the present case, if Father can establish the minor child's residency with him in Oklahoma for the requisite time, he is entitled to proceed. It is alleged that the minor child had lived with Father in Oklahoma for seven consecutive months.[18] See 43 O.S. Â§Â§ 551-102(7), 551-201(A). The joint dismissal of the Kansas Divorce nullified the Kansas divorce court's initial determination of child custody under the UCCJEA. The joint dismissal of the Kansas divorce action prior to the divorce filings in Oklahoma, is the key pivotal and procedural distinction that separates this case from most UCCJEA disputes where simultaneous proceedings are pending in sister states.

Â¶28 Pursuant to 43 O.S. Â§ 551-206(A):

[A] court of this state may not exercise its jurisdiction under this article if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this act, unless the proceeding has been terminated or is stayed . . . .

43 O.S. Â§ 551-206(A) (emphasis added). Here, jurisdictional competition among sister states and dual pending child custody proceedings in sister states did not occur simultaneously. Id. Instead, the Kansas divorce action had already been terminated prior to Father's divorce filings in Oklahoma; thus, the Oklahoma trial court may have had jurisdiction to make an initial child custody determination under the UCCJEA and it could do so without violating 43 O.S. Â§ 551-206(A). See 43 O.S. Â§Â§ 551-201(A), 551-206(A). Said another way, the Kansas child custody determination no longer existed, and the Oklahoma trial court was required to determine if it had jurisdiction to make an initial determination of child custody under 43 O.S. Â§ 551-201(A), if jurisdiction was established. See 43 O.S. Â§Â§ 551-102(7), 551-102(8), 551-201(A), 551-206(A).

Â¶29 This is also consistent with the Kansas divorce court's Order Denying Mother's Motion to Reinstate the Proceedings, wherein the Kansas court opined it would be willing to accept this case back from Oklahoma via a transfer upon the Oklahoma trial court's request. The very language used in its Order Denying Mother's Motion to Reinstate the Proceedings, implicitly acknowledges that Kansas no longer had child custody jurisdiction (or any jurisdiction) because the case had already been dismissed.

Â¶30 As a result, if UCCJEA residency is established by Father, then Oklahoma is the minor child's home state under the UCCJEA. Oklahoma would then be required to make an "initial determination" of child custody.[19] See 43 O.S. Â§Â§ 551-102(7), 551-102(8), 551-201(A)(1).

Â¶31 The trial court's failure to fully conduct a home state jurisdictional analysis and/or its erroneous conclusion that it could not make an initial determination of child custody due to the previously filed and jointly dismissed Kansas divorce case was in error. As a result, we remand to the trial court for a determination whether or not Oklahoma is the new home state, and if so, for an initial child custody pursuant to 43 O.S. Â§ 551-201(A).

E. If Oklahoma is the Home State, then the Claim of Forum Non Conveniens Must be Addressed

Â¶32 If Oklahoma had become the minor child's new "home state" at the time Oklahoma Divorce II was filed, then the Oklahoma court would be required to rule upon Mother's claim of forum non conveniens. In that event, the court would have discretion, if it so chooses, to decline or yield its jurisdiction to fulfill the policies underlying the UCCJEA. See 43 O.S. Â§Â§ 551-101(A), official cmt. 1, para. 1-2, 551-207(A). The UCCJEA provides the home state with an option to decline or yield its jurisdiction based on a forum non conveniens basis. See 43 O.S. Â§ 551-207(A); see also Holt, 1981 OK 39, Â¶Â¶ 17-18, 626 P.2d at 1340 (two questions must be asked: (1) has there been compliance with the jurisdictional provisions [in this case the UCCJA] and (2) whether jurisdiction should be exercised); In re R.L.S., 1994 OK CIV APP 102, Â¶Â¶ 40-41, 879 P.2d 1258, 1268 (an Oklahoma trial court can decline and yield its jurisdiction in certain circumstances).

Â¶33 Because the Oklahoma trial court erroneously concluded that it could not make an initial determination of child custody under the UCCJEA, the Oklahoma trial court never reached a determination on Mother's claim of forum non conveniens. The appellate record reflects a somewhat lengthy and active Kansas divorce action that had been ongoing for approximately two years and that trial was imminent before it was jointly dismissed at the request of both parents. On remand, if Oklahoma is determined to be the new "home state," we direct the Oklahoma trial court to hear evidence and to make findings of fact and conclusions of law concerning Mother's claim of forum non conveniens in accordance with the eight factors set forth in 43 O.S. Â§ 551-207(B)(1)-(8).[20]

Â¶34 In such event, if the Oklahoma trial court determines on remand, that Oklahoma is an inconvenient forum and that the Kansas divorce court "is a more appropriate forum, it shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state [Kansas] and may impose any other condition the court considers just and proper." 43 O.S. Â§ 551-207(C) (emphasis added).[21]

III. CONCLUSION

Â¶35 The trial court erroneously concluded it could not make an initial determination of child custody jurisdiction under the UCCJEA without first considering whether or not Oklahoma had become the new home state. See 43 O.S. Â§ 551-201(A). While the Kansas divorce court was the first court to issue an initial determination of child custody for this particular minor child under the UCCJEA, the Oklahoma trial court erroneously and prematurely concluded its home state jurisdictional analysis and failed to consider the effect of the joint dismissal of the Kansas divorce action prior to Father's divorce actions being filed in Oklahoma. As such, we reverse the Oklahoma trial court and hold that the trial court must rule upon whether Oklahoma became the new "home state" of the minor child pursuant to the UCCJEA when the Father filed Oklahoma Divorce II. If Oklahoma is the new home state, the trial court shall make an initial determination of child custody pursuant to 43 O.S. Â§ 551-201(A). In the event that Oklahoma has not become the new home state, the trial judge shall transfer the case to Kansas under 43 O.S. Â§ 551-204(B).

Â¶36 In the event that Oklahoma is found to be the new home state, the trial court shall also conduct an evidentiary hearing and to make specific findings of fact and conclusions of law for a determination on Mother's claim of forum non conveniens, specifically, for a determination as to whether the Oklahoma trial court should yield or decline its home state jurisdiction to meet and/or better satisfy the intent and purposes behind the passage of uniform legislation, like Oklahoma's UCCJEA. See 43 O.S. Â§Â§ 551-101, official cmts. 1-6, 551-201, 551-207. The trial court's order is affirmed in all other aspects.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Gurich, C.J., Darby, V.C.J., Winchester, Edmondson, Kane and Rowe, JJ., concur;

Colbert and Combs, JJ., concur in result;

Kauger, J., dissents.

Kauger, J., dissenting:

"I would issue a show cause order to determine where the child is residing."

FOOTNOTES

[1] See Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), 43 O.S.2011 Â§Â§ 551-101 to 551-402.

[2] See 43 O.S. Â§ 551-206(A), which prohibits simultaneous child custody actions pending in sister states.

[3] See 43 O.S. Â§ 551-102(7).

[4] See 43 O.S. Â§ 551-207(A), which sets forth conditions under which a court of this state may decline to exercise jurisdiction if it determines that it is an inconvenient forum. Section 551-207(B)(1)-(7) also sets forth numerous factors a court of this state should consider in determining whether or not to decline jurisdiction based on an inconvenient forum.

[5] 43 O.S. Â§ 551-204(B) provides, in relevant part:

B. If there is no previous child custody determination that is entitled to be enforced under this act and a child custody proceeding has not been commenced in a court of a state having jurisdiction under Sections 13 through 15 of this act, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under Sections 13 through 15 of this act. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under Sections 13 through 15 of this act, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

[6] Turpin, Oklahoma is located roughly fourteen miles south of Liberal, Kansas and just across the Kansas-Oklahoma border. When Father filed the Kansas Divorce action in 2017 in Seward County, Kansas, the parties and their minor child lived in Liberal, Kansas.

[7] Neither party has appealed the property division or divorce jurisdiction of the Oklahoma court. Father appealed the custody provisions by filing a Petition in Error with this Court on October 1, 2019. The Oklahoma trial court filed an Amended Order on November 13, 2019, and Father filed an Amended Petition in Error on December 6, 2016. Thereafter, the Oklahoma trial court issued another Amended Order on March 12, 2020. Upon this Court's receipt of the Oklahoma trial court's Amended Order dated March 12, 2020, this Court concluded on March 25, 2020, it has jurisdiction over this matter as an appeal from a final judgment designated as such by the trial court pursuant to 12 O.S.2011 Â§ 994(A).

[8] See 10 O.S.Supp.1980 Â§Â§ 1601-1627, subsequently renumbered 43 O.S.Supp.1990 Â§Â§ 501-527, and repealed by Laws 1998 c. 407, Â§ 43, eff. Nov. 1, 1998.

[9] Section 1 of the UCCJA contained a statement of the purposes of the Act. See 10 O.S.Supp.1980 Â§ 1601, subsequently codified at 43 O.S.Supp.1990 Â§Â§ 501-527, and repealed by Laws 1998 c. 407, Â§ 43, eff. Nov. 1, 1998. Although extensively cited by the courts, it was eliminated in the UCCJEA because Uniform Acts no longer contain such a section. Nonetheless, the UCCJEA should be interpreted according to its purposes. See 43 O.S. Â§ 551-101, official cmts., para. 1, official cmts. 1-6.

[10] See 10 O.S.Supp.1980 Â§ 1602(4), subsequently renumbered 43 O.S.Supp.1990 Â§ 502(4), and repealed by Laws 1998 c. 407, Â§ 43, eff. Nov. 1, 1998 (one of the purposes of the UCCJA was to discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child).

[11] The State of Kansas adopted and codified its UCCJEA within its own statutory scheme. See Kan. Stat. Ann. Â§Â§ 23-37,101 to 23-37,405 (eff. July 1, 2000).

[12] While not dispositive of the issues in the case currently before us, we acknowledge and conclude Kansas's version of the UCCJEA is in substantial conformity with Oklahoma's UCCJEA.

[13] "The dismissal of an action ousts the court of its jurisdiction of the action dismissed, and no further proceedings can be had or judgment rendered by the court. The court is without power to make any other order, except such as may be necessary to close the litigation properly." 27 C.J.S. Dismissal and Nonsuit Â§ 14 (internal citations omitted).

[14] "The intent of the UCCJA was likewise to maintain continuing jurisdiction in the state issuing the original decree. However, equally clear is the fact that a court was never deemed to have perpetual jurisdiction and that at some point it may lose jurisdiction." G.S. v. Ewing, 1990 OK 1, Â¶ 2, 786 P.2d 65, 72 (Lavender, J., dissenting) (internal citations omitted).

[15] Although the child custody dispute in O'Malley concerns the adoption of a minor child, the father, like Father in our case, initially filed a child custody proceeding in the state of Ohio after residing there for less than two months, which was less than the six month jurisdictional requirement for home state jurisdiction under Ohio's UCCJEA. See C.H. v. O'Malley, 140 N.E.3d 589, 592-93 (Ohio 2019). To remedy this jurisdictional defect, the father filed a notice of voluntary dismissal without prejudice and then filed a second action for child custody in Ohio after the minor child had been in Ohio for fifteen months--well past the six month jurisdictional requirement for home state status. Id.

[16] The child custody judgment also recited that the father and the minor child lived in Oregon and the mother lived in the state of Washington. See Campbell v. Tardio, 323 P.3d 317, 318 (Or. Ct. App. 2014). In hopes of reconciliation, the father eventually acquiesced to the mother's request to terminate the Oregon custody order. Id. The parties signed a stipulated motion providing that the earlier judgment of custody and visitation be dismissed. However, the parties did not reconcile and the mother moved with the minor child from the state of Washington to North Dakota. Thereafter, the father petitioned the state of Oregon to reestablish child custody. Id.

[17] The Court of Appeals in Tardio also noted that at the time of the commencement of the proceeding before the trial court, the child had not lived in California for six months and had not lived in North Dakota at all. See Tardio, 323 P.3d at 318. Moreover, no proceeding had ever been filed in the state of Washington, and no Washington court had made any findings adverse to Oregon jurisdiction. Id. The father still lived in Oregon and both Father and the minor child still had a significant connection with Oregon. Id.

[18] The Court is mindful of the appearance that Father may have been forum-shopping among the state courts, which has included three divorce and child custody lawsuits being filed in two separate states (albeit only fourteen miles apart) within a relatively short period of time. However, even when the UCCJEA's statutory provisions are applied correctly to the facts of this case, the end result allows child custody jurisdiction to "shift" between two states, although not simultaneously, which the Act was designed to prevent. See 43 O.S. Â§ 551-101, official cmts. 1-6.

[19] It matters not that the Kansas divorce court's initial child custody determination was temporary in nature. See 43 O.S. Â§ 551-102(3).

[20] When conducting a forum non conveniens analysis, the court should consider the ability of the court to arrive at a solution to all legal issues surrounding the family. If one State has jurisdiction to decide both the custody and support issues, it would be desirable to determine that State to be the most convenient forum. See 43 O.S. Â§ 551-207, official cmt., para. 4.

[21] Under the UCCJEA, the trial court may not simply dismiss the action based on an inconvenient forum. To do so would leave the case in limbo. Rather, the court shall stay the case and direct the parties to file in the State that has been found to be the more convenient forum. See 43 O.S. Â§ 551-207, official cmt., para. 6.

Â